THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS V. LINDSEY, Defendant-Appellant.

First District (4th Division)   Nos. 77-1706, 78-372 cons.

Opinion filed March 1, 1979.

Ralph Ruebner and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Pamela L. Gray, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, the defendant, Dennis Lindsey, was found guilty of theft, possession of burglary tools, and possession of a stolen vehicle. The defendant was sentenced to a term of imprisonment of one to three years on each count. At an earlier date the defendant had been indicted for armed robbery, an offense arising out of an unrelated incident, pleaded guilty and was sentenced to two years probation for that offense. The defendant's probation was revoked following his conviction in this case and he was sentenced to a term of imprisonment of one to three years on the robbery conviction, that sentence to run concurrently with the sentences imposed on the convictions in this cause. On appeal, the defendant argues the trial court erred in preventing the defendant from completing the impeachment of an occurrence witness; that the court erred in finding the defendant guilty of both theft and possession of a stolen vehicle where

both offenses arose from a single act of the defendant; and that the order revoking probation should be reversed or reversed and remanded.

Randall Smith, a Chicago Heights police officer, testified that he and his partner, John Schmidt, in response to a radio call, proceeded to 1220 Wentworth, in the City of Chicago Heights, on December 15, 1976, at approximately 10:30 p.m. They drove into a parking lot next to the three-story apartment building, and saw two men near the rear of a Cadillac. One of the men, later identified as Willie Brown, the co-defendant ran towards the apartment building. He was pursued by Smith and Schmidt. Smith chased the man into the building and lost sight of him there. The policemen found the defendant in a Pontiac which was parked next to the Cadillac. Four hubcaps and two rear fender skirts had been removed from the Cadillac; lug nuts on the wheels had been removed; wires were hanging down from the interior of the car; the ignition switch had been pulled out from the steering column; and there was extensive damage to the dashboard. Socket wrenches were recovered from the rear seat of the Cadillac and various screwdriver attachments were recovered from the defendant's pocket. Tools were also found on the front seat of the car in which the defendant was found, and two open tool boxes and a flashlight were on the floor in the back of the car. The State's evidence further established that the Cadillac in question had been stolen.

Robert Richards testified that he was in his third floor apartment at 1220 Wentworth on the night in question. He looked out the kitchen window and saw two people near a Cadillac in a parking lot across the street from his building. Richards watched them for about five minutes and called the police after seeing the man close to the rear wheel remove a hubcab and take it to the other man, who was stacking hubcaps. Richards was away from the window for about 30 seconds while he called the police. When the police arrived, Richards saw one of the men, who he identified at trial as the defendant, get into the Pontiac, while the other ran to the apartment building. On cross-examination, Richards admitted he had lost sight of the defendant for about half a minute while the first man ran to the apartment building.

Richards was also asked, on cross-examination,

> "Earlier today when I was talking to you, didn't you tell me that the man that you saw, the other man, the one that didn't have the braided hair was tall and stocky?"

The State's Attorney objected, saying there had to be a third party to the conversation for the impeachment to be later perfected. Defense counsel said there was a third party. The court directed the witness to answer the question. Richards responded that he had earlier described the offender as "tall," and said he did not remember saying he was "stocky." During

the defendant's case the court refused to allow defense counsel to call Thomas Pavletic, another Assistant State's Attorney and the third party to the out-of-court conversation, to complete the impeachment by testifying that Richards had described the defendant as "stocky."

The defendant testified that on the day in question he had gone to visit a friend, Pam Brown, who lived at 1220 Wentworth. When he drove his Pontiac into the parking lot he saw two men in a Cadillac. He got out of his car and had walked about 10 feet towards the building when he heard a shot. The defendant ran back to his car. He saw the two men, who had been next to the Cadillac, run in different directions. The police arrested him. The defendant conceded he had tools in his car, but said he never touched the Cadillac and did not have any tools outside his car.

Pam Brown was also called as a defense witness. She testified that the defendant was her friend and that he had visited her at her apartment on the evening in question. The defendant left her apartment between 8 and 9 p.m. Sometime after 10:30 p.m., the witness heard a gun shot. She looked out the window and saw the police arriving. She did not see any other movement in the parking lot and did not see the defendant.

The defendant's first argument on appeal is that the trial court erred in preventing him from completing the impeachment of Richards by ruling that Pavletic could not testify.

■■ Before evidence of a prior inconsistent statement may be admitted it is necessary for the witness to have made a statement at trial as to which the inconsistency with the prior statement can be shown. *Crespo v. John Hancock Mutual Life Insurance Co.* (1976), 41 Ill. App. 3d 506, 354 N.E.2d 381.

■■ We find nothing in Richards' testimony which could be construed as inconsistent with his alleged prior description of the offender as "stocky." Richards never described the defendant's physical appearance in his testimony at trial. The only questions on this subject were limited to Richards' recollection of the earlier, out-of-court conversation. The trial judge was thus correct in refusing to allow the defense to complete the attempted impeachment because no inconsistency with anything said at trial had been demonstrated. See generally 3A Wigmore, Evidence §1038, at 1046 (Chadbourne rev. 1970).

■■ The defendant next argues the trial court erred in finding him guilty of both theft and possession of a stolen vehicle where both offenses arose from a single act. The defendant asks that the conviction for the lesser included offense of possession of a stolen vehicle be reversed. The State concurs in this argument. In accord with the Illinois Supreme Court's decisions in *People v. Schlenger* (1958), 13 Ill. 2d 63, 147 N.E.2d 316, and *People v. Stewart* (1970), 45 Ill. 2d 310, 259 N.E.2d 24, we find that the defendant's convictions for theft of a specific automobile and possession

of the same vehicle knowing it to be stolen are based upon a single act; that only one sentence should have been imposed; and that the one sentence should have been for the greater offense, in this case the offense of theft.

The defendant's final contention is that if the convictions being appealed herein are reversed, the order revoking the defendant's probation should also be reversed. We need not reach this issue due to our disposition of the cause.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed as to the theft and possession of burglary tools convictions and reversed as to the conviction based on possession of a stolen vehicle.

Affirmed in part, reversed in part.

LINN and ROMITI, JJ., concur.