THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY VALENTINO, Defendant-Appellant.

First District (4th Division)   No. 83—2552

Opinion filed February 21, 1985.—Rehearing denied March 29, 1985.

James J. Doherty, Public Defender, of Chicago (Marilyn Martin, Assist-

ant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Frank Zelezinski, and Beth Herndobler, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Jeffrey Valentino, appeals his convictions, in a jury trial, of murder, robbery, theft, and possession of a stolen vehicle (Ill. Rev. Stat. 1979, ch. 38, pars. 9—1(a), 18—1(a), 16—1(a); ch. 95½, par. 4—103(a)(1)). He was sentenced to 30, five, seven, and three years on the respective charges. Defendant raises the following issues for review: (1) whether the trial court erred in admitting evidence of a semen deposit found on the victim's body; (2) whether the trial court erred in failing to instruct the jury in response to its question about the use of force in robbery; (3) whether he was proved guilty beyond a reasonable doubt of robbery and murder; (4) whether the prosecutor's remarks during closing argument were prejudicial; and (5) whether he was improperly convicted of both theft and possession of a stolen vehicle.

We affirm in part and reverse in part.

Defendant was convicted of the murder of Melanio Reyes. At trial, Thomas Keane, a Chicago policeman, testified that on June 26, 1981, he was assigned to investigate a homicide on the lakefront. The victim was on the grass near bushes. The upper portion of the body was nude and a multicolored shirt was fastened tightly around the neck. The victim wore socks and shoes, and his pants and underpants were around his ankles.

Larry Perez, 21 years old, testified that shortly after midnight on June 26, 1981, he was on the lakefront with several friends when he saw defendant in an automobile. He and defendant had been friends for five years. When Perez asked defendant where he got the car, defendant said he had just "knocked a gump, a homosexual." Defendant displayed the victim's wallet containing credit cards. He also showed how he strangled the victim with a shirt. Derrick Smith corroborated Perez' testimony. Additionally, Smith testified that defendant admitted taking $10 from the victim.

William Schober, a Chicago policeman, was assigned to locate defendant. On June 30, 1981, at 10:15 p.m., he saw defendant standing on a street corner and signaled to him to approach the police car. After defendant entered the car, he said, "I guess you guys heard about the murder down at the lakefront. *** I did it. I got to get it off my chest. It's been bothering me." Schober advised defendant to

remain silent and told him he could talk with officers investigating the case.

Chris Grogman, a Chicago police detective, searched defendant's apartment on July 1, 1981, at 3:30 a.m., pursuant to a consent form signed by defendant. In a blue knapsack in a closet, Grogman found 18 credit cards with the name of Melanio Reyes or his wife.

Mary Ann Furlong testified that she was employed by the Chicago Police Department in the microanalysis crime laboratory. She was qualified as an expert microanalyst. In 1981, she was assigned to the Reyes homicide investigation. A rectal swab taken from Reyes revealed the presence of semen, but not sperm. It is possible to determine blood type from seminal fluid because 80 to 85% of men secrete their blood type in their semen. However, in June 1981, when the rectal swab was taken, it was not standard procedure to perform a secretor test. No such test was made of the victim's rectal swab.

Robert Stein, chief medical examiner for Cook County, testified that he performed an autopsy upon the victim. The cause of death was asphyxia due to ligature strangulation.

Jeffrey Valentino, 20 years old, testified that on the date in question he was walking toward the lakefront when he observed a man driving a car who waved at him. Defendant ignored the man. He saw the man waving at him two more times, but he continued to ignore him. Eventually, defendant walked away from the lake and through a park where he saw the same man standing in front of a row of bushes. The man's trousers were unzipped. The man said he wanted to have sex with defendant, but the latter walked away. The man grabbed defendant's belt; defendant tried to run but fell to the grass. He thought the man was trying to rape and murder him. In the ensuing struggle, defendant tied a shirt around the man's neck, and then tied a second knot. When the man ceased struggling, defendant took a set of car keys and drove off in the man's car.

Defendant drove around until he saw a friend, Steven Murphy, who was accompanied by several young men. He told Murphy that he had a "run-in" with a homosexual who was trying to rape him. Defendant said he "knocked out" the man. Defendant allowed Murphy to drive the car. When defendant exited the car, he took a blue knapsack, which belonged to the victim, to his apartment and placed it in a closet.

A few days later when a police officer indicated that he wanted to talk with defendant, the latter entered the police car and admitted that he was responsible for the murder near the lake.

On rebuttal, the prosecution recalled Officer Grogman, who recov-

ered a shirt and pants from defendant's apartment. Defendant admitted to Grogman that he wore the clothes at the time of the murder. The clothes had no tears or grass stains, dirt, or bloodstains. Defendant also admitted to Grogman that he told friends that if they were caught with the victim's car they would face a murder charge.

During deliberations, the jury sent to the judge a note asking whether use of force to sustain a charge of robbery means that the intent to rob was the reason for using force. The trial judge instructed the jury to reread the instruction regarding the necessary elements to prove robbery. The jury found defendant guilty of robbery, theft, possession of a stolen vehicle and murder. The trial court sentenced defendant to 30 years for murder, seven years for robbery, five years for theft, and three years for possession, the sentences to be served concurrently. Defendant appeals.

■ Defendant argues at length that admission of evidence of semen constituted reversible error. He contends that no evidence connected the semen to either him or the offense; therefore, it was inadmissible. Defendant claims that the prosecution predicated its entire theory of the case on the semen evidence and used it as a rebuttal to his self-defense claim. Reference to the semen evidence was also used to exhort the jury to feel sympathy for the victim.

Defendant further contends that the State had a duty to preserve the rectal swab. According to defendant, this duty was not contingent upon a defense request for examination because, if that were so, the duty might not arise until it became impossible of performance. The testimony of Mary Ann Furlong, the microanalyst, fell short of the required showing of rigorous and systematic procedures adequate to the task of preservation. Defendant claims he need show only that there was a reasonable possibility that the lost evidence would have been favorable. He theorizes that positive proof that the semen deposit was not his would have significantly weakened the State's theory of a "trick" murder based on an act of anal intercourse and would have strengthened his testimony as to self-defense. Alternatively, defendant argues that at the very least he is entitled to a new trial at which the State stipulates that the semen deposit was unrelated to defendant.

Physical evidence may be admitted where there is evidence to connect it to both the defendant and the crime. Proof of this connection may be circumstantial. The basic question in determining the sufficiency of the nexus is one of relevance. (*People v. Miller* (1981), 98 Ill. App. 3d 453, 458, 424 N.E.2d 624, 628.) In the instant case, evidence of the semen deposit was relevant to show a condition of the body at the time it was found.

We disagree with defendant that admission of this evidence prejudiced him. The jury need not have assumed that the semen was defendant's to accept the prosecution's theory of a homosexual "trick" murder. Indeed, the jury need not have made any assumptions as to the donor of the semen in the absence of any other evidence. Defendant himself admitted that there was a homosexual basis for his encounter with the victim. Defendant claimed that the victim made sexual advances and was trying to rape him. Scientific evidence that the semen was not defendant's would not have made defendant's theory of self-defense more believable. There was sufficient evidence from which the jury could conclude that defendant intended to kill and did not act defensively. Shortly after the homicide, defendant told acquaintances that he assaulted a homosexual and he confessed to police that he was responsible for the "murder" on the lakefront. We hold that the trial court did not commit reversible error in admitting evidence of a semen deposit.

■■ Next, defendant contends that the trial court's failure to further instruct the jury in response to its question about the law of robbery was reversible error. During deliberations, the jury sent a note to the judge, asking, "To sustain charge of robbery—does 'use of force' mean that the intent to rob was the reason for using force?" The judge responded: "In answer to your note you are directed to reread the instruction beginning 'To sustain the charge of robbery, the State must prove the following propositions, etc.' " The complete jury instructions for robbery provided as follows:

"A person commits the offense of robbery when he takes property from the person or presence of another by the use of force or by threatening imminent use of force."

"To sustain the charge of robbery, the State must prove the following propositions:

First: That the defendant took an automobile and credit cards from the person or presence of Melanio Reyes; and

Second: That the defendant did so by the use of force or by threatening the imminent use of force.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

Defendant argues that referral to the original instructions was inadequate to cover the specific point raised in the jury's inquiry. The

jury instructions did not specify that the use of force must be accompanied by an intent to rob and not by some other intent.

It is elemental that no one instruction must state all the law on a particular question but that all the instructions must be read as a whole to determine whether they fairly inform and guide the jury. (*People v. Gauwitz* (1980), 80 Ill. App. 3d 362, 367, 400 N.E.2d 92, 96.) In the instant case, the instructions concerning robbery properly conveyed to the jury what the situation was. The first instruction informed them that the offense of robbery is committed when property is taken from the person or presence of another by the use or threat of force. The second instruction informed the jury that defendant committed that offense if they found he took property from the victim by threatening or using force. Any ambiguity as to intent arising from the first instruction was clarified by the second. We conclude that the trial court properly referred the jury to the original instructions on the elements of robbery.

■ Next, defendant contends the State failed to prove beyond a reasonable doubt that force or the threat of force was used for the purpose of accomplishing a taking. He argues that there was no evidence that force was used against the victim for the purpose of depriving him of his car and credit cards. Defendant claims that the taking of the car was merely an afterthought which established theft, but not robbery. According to defendant, the robbery provided the predicate felony for a felony murder charge upon which the jury was instructed. In the absence of special verdicts, it is impossible to determine whether the jury based its murder verdict on a theory other than felony murder. Thus, defendant reasons, his murder conviction should also be reversed.

We disagree with defendant's contentions. Whether defendant used force to deprive the victim of property was an issue of fact for the jury to decide. A reviewing court will not disturb a jury's finding of guilt unless the evidence is so improbable or unsatisfactory as to leave a reasonable doubt of defendant's guilt. (*People v. Kelly* (1976), 39 Ill. App. 3d 988, 992, 351 N.E.2d 419, 422.) In the instant case, there was sufficient evidence from which the jury could conclude that defendant was guilty beyond a reasonable doubt of robbery and murder. Shortly after the homicide, defendant told acquaintances that he had assaulted a homosexual. When he saw a policeman several days after the incident, he admitted he was responsible for a murder. From these admissions, the jury could properly infer that defendant's claim of self-defense was incredible and that he used force to accomplish a taking. We hold that defendant was proved guilty beyond a reasonable

doubt of robbery and murder.

■ Defendant contends that remarks made by the prosecutor during rebuttal argument were prejudicial error. Defendant complains of statements by the prosecutor that defendant told "whopping lies" at trial, that defendant had five days after the homicide to make up a story, that he concocted and memorized a story, and that his attorney drilled defendant "over and over on this story so he had it perfect." Defendant claims these improper remarks denied him a fair trial.

It is error to charge defense counsel with using improper tactics to defend his client. Such errors exist when the defense is accused of fabricating its case or of suborning perjury. (*People v. Smylie* (1981), 103 Ill. App. 3d 679, 686, 431 N.E.2d 1130, 1136.) In the instant case, we interpret the prosecutor's remarks to mean that defense counsel merely prepared defendant for trial. Moreover, defendant is not entitled to a new trial unless the allegedly improper remarks substantially prejudiced defendant or constituted a material factor in his conviction. (*People v. Smylie* (1981), 103 Ill. App. 3d 679, 686-87.) In this case, the prosecutor's allegedly improper remarks did not substantially prejudice defendant nor did they constitute a material factor in his conviction. As stated above, defendant's admissions constituted sufficient evidence for a finding of guilty.

■ Finally, defendant argues, and the State concedes, that the trial court erred in entering judgment and sentencing him on charges of theft and possession of a stolen vehicle. The jury found defendant guilty of both offenses and the trial court sentenced him to five years and three years, respectively. In the instant case, possession of a stolen vehicle was a lesser included offense of theft, since both offenses arose from a single act. (*People v. Lindsey* (1979), 69 Ill. App. 3d 493, 496, 387 N.E.2d 828, 830.) Only one sentence should have been imposed and that one should have been for the greater offense, in this case, the offense of theft. (*People v. Lindsey* (1979), 69 Ill. App. 3d 493, 497.) Under Supreme Court Rule 615 (87 Ill. 2d R. 615), we reverse defendant's conviction for possession of a stolen vehicle and vacate the three-year sentence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed as to the convictions of murder, robbery and theft and reversed as to the conviction based on possession of a stolen vehicle, and the three-year sentence is vacated.

Affirmed in part, and reversed in part and vacated in part.

LINN and ROMITI, JJ., concur.