THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES THOMAS, Defendant-Appellant.

First District (6th Division)   No. 1—87—0382

Opinion filed September 22, 1989.

Randolph N. Stone, Public Defender, of Chicago (Karen E. Tietz, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Laurie Feldman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LaPORTA delivered the opinion of the court:

Following a jury trial, defendant, Charles Thomas, was convicted of two counts of armed robbery and of one count of unlawful restraint. Defendant was sentenced to concurrent terms of 10 years for each armed robbery conviction and three years for unlawful restraint. On appeal, defendant contends that (1) the State presented insufficient evidence to prove him guilty of the armed robbery of Althea Johnson Hayes; (2) the trial court erred in admitting certain hearsay evidence against him; and (3) he was deprived of his right to a fair and impartial jury.

Defendant was charged by indictment with five counts of armed robbery and four counts of unlawful restraint. The court granted the State's motion to *nol-pros* three of the armed robbery counts and three of the unlawful restraint counts. On May 29, 1986, a jury trial was commenced on the remaining charges. The jury was, however, unable to reach a unanimous verdict, and on June 3, 1986, the court declared a mistrial.

A second trial was commenced on August 4, 1986. During *voir dire* by the court, venireman Christopher Thompson indicated that some of his friends were police officers and that he may have a tendency to believe policemen more than other witnesses. Thompson also stated that he could be fair and impartial and that he would have no problem signing a not-guilty verdict if the State failed to carry its burden of proving defendant guilty beyond a reasonable doubt. Defense counsel did not challenge Thompson for cause or exercise a peremptory challenge against him. Thompson was accepted by the State and was one of the 12 jurors who found defendant guilty. Defendant raised no objection to Thompson's service on the jury, and defense counsel specifically directed a portion of his opening statement and his closing argument to Thompson.

The evidence adduced at trial established that on September 21, 1985, Thomas Hayes, Jr., was the manager of the Kentucky Fried Chicken restaurant at 1211 West Roosevelt Road in Chicago, Illinois. His wife, Althea Johnson Hayes, drove him to work that afternoon and arranged to pick him up after he had closed the store and completed his paperwork. The Hayeses' five children were in the car

with Mrs. Hayes when she went to pick up her husband about 2 a.m. Mrs. Hayes was in the driver's seat, her daughter, Tuesday, was seated in the front passenger seat, and her four sons were in the back seat. Tony sat directly behind Mrs. Hayes, Aron and Tavarus were asleep in the middle, and Victor sat in the rear passenger seat.

Mr. Hayes was alone in the restaurant when he saw his family in the parking lot. He then turned off the restaurant lights, set the alarm, and walked to the front door. As he was leaving, Hayes saw a man who was later identified as Lee Daniels standing outside the door. Daniels drew a gun and pushed Hayes back into the restaurant. Hayes saw another man standing next to his family's car in the parking lot and testified without objection that Daniels said that his partner was with Hayes' family and would hurt them if he activated an alarm. Daniels took some rolled coins and about $90 in paper currency from the restaurant safe as well as the money Hayes had in his pockets. Daniels then forced Hayes at gunpoint back to the front door. After Daniels had run from the building, Hayes activated the alarm and called the police. On redirect examination, Mr. Hayes again testified that Daniels said that his partner was in the car with Hayes' family and that something would happen to them if Hayes activated the alarm. Defense counsel objected, but the trial court overruled his objection and admitted the evidence of Daniels' statement.

When Mrs. Hayes saw Daniels point a gun at her husband, she started the car to go get help, but the defendant tapped on the window and told her to turn the car off. Mrs. Hayes did as the defendant said because she feared that her children would be harmed. The defendant then opened the car door and got into the driver's seat, directing Mrs. Hayes to move over and to put her head down. Mrs. Hayes complied and put her arms around Tuesday and her hand over Tuesday's mouth. Defendant then drove the car around the parking lot for several minutes. Victor Hayes, age 10, observed through the space for the front-seat arm rest that defendant held a gun in his right hand, pointed it at Mrs. Hayes, and drove the car with his left hand. Tony, age 13, did not see the defendant's right hand, but did observe that he used his left hand to steer the car.

When defendant stopped the car, he told Mrs. Hayes that she could find her keys in the adjacent vacant lot. He then threw the keys into that lot and went over to a car that was parked across the street. After a couple of minutes, Mrs. Hayes, Tony, and Tuesday got out of their car to look for the keys in the vacant lot. While they searched for the keys, the defendant ordered them to return to their car, and they complied. The defendant thereafter pulled his car in

front of the restaurant. Daniels ran from the building, yelling that there was no money. Daniels got into defendant's car, and they drove off. Victor and Tony positively identified defendant as the offender in a lineup and in court, and Tuesday identified him in a lineup.

During October 1985, defendant spoke with Stanley Edwards and admitted that he and Daniels were responsible for robberies of several Kentucky Fried Chicken restaurants around the city. Defendant also stated that during the robbery of the restaurant at 1211 West Roosevelt Road, Daniels waited for the store manager to come out and then escorted him back into the building while defendant entered a car with a woman and children in it in order to keep them quiet. About a month later, Edwards told Detective John Summerville about defendant's involvement in this robbery.

Following closing arguments and instructions, the jury returned verdicts finding defendant guilty of two counts of armed robbery and one count of unlawful restraint. Defendant subsequently filed a motion for a new trial, asserting 28 points of error. Defendant's motion did not, however, allege that he had been denied the right to trial by a fair and impartial jury. After hearing argument by counsel, the trial court denied defendant's motion.

■■ ■ We initially consider defendant's contention that his conviction should be reversed because there was no evidence that he used or threatened the imminent use of force against Althea Hayes. A conviction of armed robbery requires proof that the accused committed a robbery while carrying, or armed with, a dangerous weapon. (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a).) The offense of robbery is committed when force or the threat of force is used in the taking of property from the person or presence of another. (Ill. Rev. Stat. 1985, ch. 38, par. 18—1(a).) That the taking was by use or threat of force is proven where the fear of the victim was of such a nature as in reason and common experience would induce a person to part with his property for the sake of his person. (*People v. Generally* (1988), 170 Ill. App. 3d 668, 672, 525 N.E.2d 106, 108; *People v. Hollingsworth* (1983), 120 Ill. App. 3d 177, 178-79, 457 N.E.2d 1062, 1064; *People v. Whitley* (1974), 18 Ill. App. 3d 995, 999, 311 N.E.2d 282, 286.) The gravamen of the offense is the use of force or intimidation in taking from a person against his will. (*People v. Downey* (1987), 162 Ill. App. 3d 322, 331, 515 N.E.2d 362, 367.) Whether or not such force or threats of force were used is a question of fact for the jury to decide, and their decision will not be disturbed unless the evidence is so improbable or unsatisfactory as to leave a reasonable doubt of guilt. *Generally*, 170 Ill. App. 3d at 672, 525 N.E.2d at 108;

*People v. Valentino* (1985), 131 Ill. App. 3d 257, 262, 475 N.E.2d 627, 632.

In the instant case, the evidence established that Mrs. Hayes and her five children went to pick up Mr. Hayes at about 2 a.m. While they waited in their car in the empty parking lot, Mrs. Hayes saw Daniels force her husband back into the restaurant at gunpoint. When she started the car to get help, defendant knocked on the window and ordered her to turn the motor off. Mrs. Hayes testified that she did as defendant told her because she feared that her children would be harmed. Defendant then got into the driver's seat and directed Mrs. Hayes to move over and to put her head down. She complied, putting her arms around Tuesday and her hand over Tuesday's mouth. After defendant stopped the car and threw her keys into the vacant lot, Mrs. Hayes and two of her children searched the lot for the keys. When defendant ordered them back into their car, they complied.

■ Mrs. Hayes' uncontradicted testimony established that after defendant approached her car, she feared for the safety of her children. The fact that Mrs. Hayes did everything the defendant told her to do is indicative that she was in fear of him and that the free exercise of her will had been suspended. (*Generally*, 170 Ill. App. 3d at 673, 525 N.E.2d at 108; *Whitley*, 18 Ill. App. 3d at 999, 311 N.E.2d at 286.) This evidence is sufficient to support the jury's verdict that defendant took Mrs. Hayes' car keys by the use or threat of force.

■ Defendant also maintains that he was erroneously convicted of the armed robbery of Althea Hayes where the evidence was insufficient to prove that he was armed with a dangerous weapon. In support of this claim, defendant points to the fact that Mrs. Hayes and four of her children did not see a weapon in his hand. This claim is without merit. Initially, it should be noted that the language of the armed robbery statute merely requires the prosecution to show that the accused carried or possessed a dangerous weapon while committing a robbery. The statute does not require the State to prove that the weapon was displayed or used. (*Downey*, 162 Ill. App. 3d at 333, 515 N.E.2d at 369.) Consequently, defendant's conviction for armed robbery need not be reversed merely because Mrs. Hayes did not see the gun in defendant's right hand.

Moreover, the failure of Mrs. Hayes and four of her children to see the defendant's gun is easily understood. The evidence indicated that Mrs. Hayes and Tuesday were crouched with their heads down in compliance with defendant's order. Aron and Tavarus were asleep, and Tony sat directly behind defendant with his view of defendant's

right hand obstructed by the back rest of the front seat. Victor, who was in the rear passenger seat, was able to see through the space for the front-seat arm rest that defendant was holding a gun in his right hand and pointing it at Mrs. Hayes.

■ Defendant asserts that Victor's testimony was unreliable. Although he was only 10 years old, Victor's testimony was clear, uncontradicted, and unshaken during cross-examination. Indeed, the trial court indicated at the hearing on defendant's motion for a new trial that Victor was an observant, convincing, and excellent witness. It is within the province of the jury to determine the credibility of Victor Hayes' testimony that defendant was holding a gun in his right hand. (*People v. Chapman* (1981), 94 Ill. App. 3d 602, 607, 418 N.E.2d 995, 998.) This testimony sufficiently supported the jury's finding that defendant was armed with a gun when he entered the car and took Mrs. Hayes' keys.

We next address defendant's assertion that the trial court erroneously allowed hearsay evidence against him. Defendant contends that the trial court improperly admitted Mr. Hayes' testimony on redirect examination regarding Daniels' statement that his partner was outside with Hayes' family and would harm them if the restaurant's alarm was activated.

■ Contrary to defendant's assertion, this evidence was admissible under the coconspirator's exception to the hearsay rule. This exception provides that the acts and declarations of a coconspirator made in furtherance of the conspiracy are admissible against a defendant even when they are made outside the defendant's presence. (*People v. Columbo* (1983), 118 Ill. App. 3d 882, 945, 455 N.E.2d 733, 779.) To introduce evidence of a co-offender's statement under this exception, the State need not charge the crime of conspiracy, but is merely required to establish a *prima facie* case by independent evidence that two or more persons were engaged in a common plan to accomplish a criminal goal or to reach another end by criminal means. (*Columbo*, 118 Ill. App. 3d at 945, 455 N.E.2d at 779.) The existence of such a plan need not be proved by direct evidence, but may be inferred from all the surrounding facts and circumstances, including the acts and declarations of the accused (*Columbo*, 118 Ill. App. 3d at 945, 455 N.E.2d at 779), and statements made in furtherance of a conspiracy are those which had the effect of advising, encouraging, aiding or abetting its perpetration (*Columbo*, 118 Ill. App. 3d at 948, 455 N.E.2d at 781.) It has also been held that statements of one coconspirator accompanying or explaining the common design are admissible against all coconspirators. *Peo-*

*ple v. Miller* (1984), 128 Ill. App. 3d 574, 586, 470 N.E.2d 1222, 1230.

■■ The record in the case at bar contains sufficient evidence to establish a *prima facie* case of a conspiracy between Daniels and defendant. They were both in the parking lot of the restaurant about two hours after the store had been closed for business. When Mr. Hayes attempted to leave the building, Daniels forced him back inside at gunpoint and defendant got into the car with Mrs. Hayes and her children. Defendant prevented Mrs. Hayes from intervening while Daniels robbed Mr. Hayes of money that was in the safe. After defendant moved his car from across the street into the restaurant parking lot, Daniels ran out of the store with the money he had taken from the safe, got into defendant's car, and the two then drove off. It is reasonable to conclude from this evidence that defendant and Daniels were engaged in a common plan to rob Mr. Hayes of the money in the restaurant safe. Daniels' statement was also made in furtherance of the conspiracy because it was clearly designed to frighten Hayes and to coerce him into cooperating with the robbers. Thus, the statement was admissible against defendant. *Miller*, 128 Ill. App. 3d 574, 470 N.E.2d 1222; *Columbo*, 118 Ill. App. 3d 882, 455 N.E.2d 733.

Although the scope of redirect examination is generally limited to the scope of cross-examination (*People v. Chambers* (1989), 179 Ill. App. 3d 565, 577, 534 N.E.2d 554, 560), defendant has waived argument of this issue by his failure to object to the admission of the same evidence during Hayes' direct examination. *People v. Hancock* (1982), 110 Ill. App. 3d 953, 956, 443 N.E.2d 226, 229.

We also reject defendant's claim that he was deprived of his right to trial by a fair and impartial jury. Defendant contends that the trial court erred in failing to excuse venireman Christopher Thompson, who was allegedly biased in favor of the prosecution. The record reveals that Thompson indicated during *voir dire* that some of his friends were police officers and that he might have a tendency to believe policemen more than other witnesses. Thompson also stated, however, that he could be fair and impartial and that he would have no problem signing a not-guilty verdict if the State failed to carry its burden of proving defendant guilty beyond a reasonable doubt. Defense counsel did not challenge Thompson for cause or exercise a peremptory challenge against him. Rather, defendant's attorney directed a portion of his opening statement and his closing argument directly to Thompson. Defendant raised no objection to Thompson's service on the jury, and his motion for a new trial did not allege that

he had been deprived of the right to trial by a fair and impartial jury.

■■ Absent plain error, failure to raise an issue at trial and in a post-trial motion constitutes waiver of the issue on appeal. (*People v. Turner* (1989), 128 Ill. 2d 540, 555, 539 N.E.2d 1196, 1202; *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1131-32, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) The plain error exception will be applied only when the evidence is closely balanced or if the error is of such a magnitude that the accused is denied a fair and impartial trial. (*Turner*, 128 Ill. 2d at 555, 539 N.E.2d at 1202.) Plain error will not be found where, as here, the venireman has indicated that he could be fair and impartial and that he would find defendant not guilty if the State failed to carry its burden of proof. (See *People v. Collins* (1985), 106 Ill. 2d 237, 271, 478 N.E.2d 267, 282, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.) Consequently, defendant has waived this issue by failing to object at trial and by failing to include it in his motion for a new trial. *Turner*, 128 Ill. 2d 540, 539 N.E.2d 1196; *Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.

■■ Moreover, review of the evidence against defendant reveals that the only police officer to testify was Detective John Summerville. Summerville's testimony merely described the lineup identifications of defendant after his arrest. This evidence was, therefore, cumulative and corroborated the testimony of Tuesday, Victor, and Tony. The jury's finding was clearly premised upon the evidence given by Althea Hayes, the victim, and her children, the eyewitnesses to the crime, which overwhelmingly established defendant's guilt.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN, P.J., and McNAMARA, J., concur.