# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Washington*, 2012 IL 107993

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JAMES WASHINGTON, Appellee. |
| | |
| Docket No. | 107993 |
| | |
| Filed | February 17, 2012 |
| Rehearing denied | May 29, 2012 |
| | |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Even though no gun was recovered, a jury could rely on a victim's eyewitness testimony to find that defendant was armed with a dangerous weapon for purposes of convictions under the Illinois Compiled Statutes of 1992 for armed robbery, aggravated kidnapping, and aggravated vehicular hijacking—reduction to lesser offenses reversed. |
| | |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Dennis A. Dernbach, Judge, presiding. |
| | |
| Judgment | Appellate court judgment reversed; circuit court judgment affirmed. |

| | |
|---|---|
| Counsel on<br>Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Alan J. Spellberg, Mary P. Needham, William C. Swallow, Annette Collins and Sari London, Assistant State's Attorneys, of counsel), for the People. |
| | Michael J. Pelletier, State Appellate Defender, Patricia Unsinn and Alan D. Goldberg, Deputy Defenders, and Laura A. Weiler, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |
| Justices | JUSTICE BURKE delivered the judgment of the court with opinion.<br>Justices Freeman, Thomas, Garman, and Karmeier concurred in the judgment and opinion.<br>Chief Justice Kilbride dissented, with opinion, joined by Justice Theis. |

**OPINION**

¶ 1    The State appeals to this court raising a single issue—whether the appellate court below erred when it held that the State presented insufficient evidence of a dangerous weapon to prove defendant, James Washington, guilty of armed robbery, aggravated kidnapping and aggravated vehicular hijacking.

¶ 2    Defendant argues that we should affirm the appellate court's judgment. No. 1-06-3159 (unpublished order under Supreme Court Rule 23). In the alternative, he cross-appeals, raising two claims: (1) that his convictions should be reduced to their lesser-included offenses because the allegations in his indictment varied from the State's proof at trial with regard to the type of dangerous weapon used, which misled him in his ability to prepare a defense, and (2) that he is entitled to a new trial because the circuit court of Cook County committed reversible error when it refused to rule, prior to trial, on his motion *in limine* regarding the admissibility of his previous convictions.

¶ 3    For reasons that follow, we hold that the appellate court erred when it reversed defendant's convictions. We also reject both claims in defendant's cross-appeal. Accordingly, we reverse the judgment of the appellate court.

¶ 4                    I. Background

¶ 5    The record reveals that the State indicted defendant on charges that he committed the offenses of armed robbery, aggravated kidnapping and aggravated vehicular hijacking on April 17, 2004. The State alleged in the indictment that defendant committed each of the offenses "while armed with a dangerous weapon, to wit: a firearm, in violation of Chapter

720, Act 5, Section 18-2(a); 18-4(a); 10-2-A, of the Illinois Compiled Statutes 1992, as amended."

¶ 6    We note that the statutes which defined each of the charged offenses were amended by our legislature effective January 1, 2000, pursuant to Public Act 91-404. Prior to their amendment, the statutes provided that a person committed the offenses of armed robbery, aggravated kidnapping and aggravated vehicular hijacking if, at the time of the offense, he "carried on or about his person or otherwise was armed with a dangerous weapon." The term "dangerous weapon" was not statutorily defined. The amended versions of the statutes altered this scheme by creating substantively distinct offenses based on whether the offenses were committed with a dangerous weapon "other than a firearm" or committed with a "firearm." Public Act 91-404 also provided a definition of the term "firearm" (see 720 ILCS 5/2-7.5 (West 2000) ("Except as otherwise provided in a specific Section, 'firearm' has the meaning ascribed to it in Section 1.1 of the Firearm Owners Identification Card Act." (430 ILCS 65/1.1))) and for those offenses committed with a "firearm," as defined by statute, there were sentencing enhancements, commonly referred to as the 15-20-25-to-life sentencing provisions, which the court was required to impose based on whether a firearm was in the offender's possession, discharged, or used to cause bodily harm. 720 ILCS 5/10-2(a)(5) through (a)(7), 18-2(a)(1) through (a)(4), 18-4(a)(3) through (a)(6) (West 2000).

¶ 7    Although defendant committed the charged offenses in 2004, the State indicted defendant using the "preamended" versions of the statutes. It did so because the sentencing enhancements in the amended versions had been declared unconstitutional by this court in *People v. Walden*, 199 Ill. 2d 392 (2002), and *People v. Moss*, 206 Ill. 2d 503 (2003). Based on *Walden* and *Moss*, the State believed that the preamended statutes had come back into force. See *People v. Gersch*, 135 Ill. 2d 384, 390 (1990) (the effect of enacting an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the amendment). Defendant made no objection to the indictment.[1]

¶ 8    Defendant's trial took place in 2006. By that time this court had filed its decision in *People v. Sharpe*, 216 Ill. 2d 481 (2005), wherein the decisions in *Walden* and *Moss* were overturned. With our decision in *Sharpe*, the enhanced sentencing provisions that were originally in the amended versions of the statutes came back into effect. Nevertheless, defendant's prosecution proceeded in accord with the indictment and defendant raised no objection to the State proceeding in this manner. This is understandable because the defendant would not have wanted to open the door to the possibility of being subject to the mandatory sentencing enhancements which must be imposed when a firearm is used in the commission of offenses.[2]

---

[1]Neither does defendant claim before this court that the State erred when it indicted him using the preamended statutes.

[2]Whether proceeding under the amended statutes with the enhanced sentencing provisions would have constituted a due process or *ex post facto* violation is a question we need not address here. However, we note that in *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964), the Supreme Court held that an "unforeseeable judicial enlargement of a criminal statute, applied retroactively,

¶ 9    Having charged defendant under the predecessor statute, the prosecution attempted to prove that defendant committed the offenses of armed robbery, aggravated vehicular hijacking and aggravated kidnapping "while armed with a dangerous weapon." To meet its burden, the prosecution presented the testimony of the victim, Abdallah Farraj.

¶ 10   Farraj testified, through an interpreter, that at about 10 a.m. on April 17, 2004, he and his cousin, Ayman, made a delivery of candy, cigarettes and tobacco products to Martino's grocery store at 3240 East 91st Street in Chicago. After making the delivery, Farraj sat in the delivery truck while he waited for Ayman, who was inside the store completing paperwork concerning the delivery. Farraj testified that, while sitting in the truck, he noticed defendant coming toward him along the side of the truck. Farraj said he started to get out, but defendant pointed a gun to his head and forced him back into the truck. With defendant still holding a gun to his head, Farraj was forced to sit on a safe that was located between the front driver and passenger seats of the truck. Another man (defendant's accomplice) then entered the driver's side of the truck and drove away. As the truck was pulling away from the store, defendant told Farraj, "Don't move," and kept the gun pointed at Farraj's head.

¶ 11   A few blocks from the market, the driver stopped the truck and defendant forced Farraj out of the truck at gunpoint. Farraj testified that defendant, while still pointing the gun at him, forced him into the back cargo area of the truck and then closed and locked the sliding cargo bay door. Farraj testified that while he was in the cargo area, the truck began moving and then stopped for a brief time. While the truck was stopped, Farraj heard noises coming from the front of the truck. Soon the truck began moving again and within a short time Farraj heard police sirens. Shortly thereafter the truck came to a sudden halt.

¶ 12   The State presented other witnesses whose testimony established that a police broadcast was issued with a description of the truck that was taken. Sergeant Timothy Koren of the Chicago police department was working beat duty in the area. He noticed a truck fitting the description and began following it. When Sergeant Koren activated his lights and siren, the truck pulled into a parking lot. Sergeant Koren saw two men jump from the front of the truck while the truck was still moving. The truck eventually came to a stop when it hit a parked car. Sergeant Koren broadcast a description of the fleeing men over the police radio and within minutes defendant was captured, although his accomplice was never apprehended and no gun was recovered. Farraj was released from the back of the truck and it was then discovered that the safe that had been in the front of the truck was missing.

¶ 13   Detective Lorenzo Sandoval of the Chicago police department testified for the State that he spoke to defendant at Area Two division headquarters after defendant's arrest on April 17, 2004. Detective Sandoval testified that, after defendant was advised of his rights,

operates precisely like an *ex post facto* law." And the Court of Appeals for the Sixth Circuit held in *Dale v. Haeberlin*, 878 F.2d 930, 934 (6th Cir. 1989), that "the right to due process prevents judicially wrought retroactive increases in levels of punishment in precisely the same way that the *ex post facto* clause does when the changes are produced by legislation." *Cf. People v. Hauschild*, 226 Ill. 2d 63 (2007) (no *ex post facto* problem where the enhancements were in effect at the time the defendant committed the offenses).

defendant told him that a few days earlier he had been approached by a person named "Johnny," who had asked him if he would like to make some money. Thereafter, on April 17, 2004, defendant drove his car to the area near Martino's grocery store and met up with Johnny. Defendant said that, at Johnny's direction, he drove a truck from the area. At some point they stopped and removed a safe, placing it somewhere on Anthony Street. After dropping off the safe, they continued on in the truck until they heard police sirens. Defendant said he jumped from the truck when he saw Johnny jump out.

¶ 14     Detective Sandoval also testified that, on the following day, April 18, 2004, he was present when defendant spoke to Assistant State's Attorney Hung. The detective testified that defendant told Assistant State's Attorney Hung he was "accountable for the robbery and kidnapping of [*sic*] that occurred on the 17th of April at 3240 East 91st Street."

¶ 15     After the State presented its evidence, defense counsel, outside the presence of the jury, moved for a directed finding on all counts, stating, "State has not proven that a firearm was in fact used. They charged a firearm, they have not proven a firearm was used." The State replied, "I believe we have met our burden in this matter. Through the testimony of Abdallah Farraj *** when you have the witness testify the defendant pointed the gun at the victim ***."

¶ 16     The trial court denied the motion and then held a jury instruction conference. During the instruction conference, the following colloquy took place:

"Ms. Sims [defense counsel]: Judge, we earlier requested a jury instruction IPI 18.07, definition of firearm. Also, shown [*sic*] you the Public Safety Act which gives definition of a firearm and the exclusions.

The Court: 18 what?

Ms. Sims: 18.07A. If I can make a record?

The Court: Sure. Go ahead.

Ms. Sims: The instructions as written anticipates exclusions. Public Safety Act lists the exclusions which are not considered a firearm. We request that instruction be given.

The Court: State?

[Assistant State's Attorney]: We object to this instruction being given. There's been testimony that the victim said the defendant had a gun. There's no testimony as to the gun being recovered. This issue ... or this instruction goes to whether a piece of evidence is actually a gun or not. This will only confuse the jury with regards to the gun. It's very simple, Your Honor, straight forward, they heard the evidence. They know a gun was not recovered. And there could be the inference made.

The Court: *** Also in the indictment, the person is charged with armed robbery, by use of force or threatening use of force, took a safe from the person or presence of, he carried upon his person or was otherwise armed with a dangerous weapon. Says to wit a firearm, the dangerous weapon, it includes bludgeon or something else.

I don't feel the State has to prove that up. The fact that he was armed with a weapon is sufficient and this definition 18.07 would not be."

¶ 17    After the trial court denied defense counsel's request to instruct the jury with Illinois Pattern Jury Instruction 18.07A and the instruction conference was completed, the jury was brought back to the courtroom and the defense rested without presenting any evidence. The matter immediately proceeded to closing argument.

¶ 18    In closing argument, the State told the jury that, although the gun was never recovered, Farraj's testimony that a gun was held to his head throughout the ordeal sufficiently established that a dangerous weapon was used in the commission of the charged offenses. Countering that argument, defense counsel attempted to persuade the jury that, because no gun was ever recovered, the evidence did not prove that a dangerous weapon was used to commit the offenses. Counsel stated:

> "[Y]ou cannot find Mr. Washington guilty unless you believe there's a dangerous weapon and we don't know. There was just simply not enough evidence. As I said, it could be a toy for all we know."

¶ 19    In rebuttal argument, the State asked the jury, "How do we know there was a gun? Because on April 17, 2004, at 10 o'clock, Abdallah Farraj's life changed that day. He told you that this defendant put a gun to his head and made him sit in the middle of the truck." The State also said that when a gun is "at your head, you know it's there."

¶ 20    After hearing all of the arguments, the jury was instructed. The court admonished the jury that it should find defendant guilty of aggravated kidnapping, armed robbery, and aggravated vehicular hijacking if it found he committed the offenses of kidnapping, robbery and vehicular hijacking "while armed with a dangerous weapon."[3]

¶ 21    While the jury was deliberating, it sent out five questions. Among them, the jury asked for a legal definition of "dangerous weapon," "reasonable doubt," and a "remedial definition of circumstantial evidence" (the jury had previously been instructed with a definition of circumstantial evidence). In response to each question, the trial judge, without objection from defendant, told the jury, "No, you have been given all your instructions, continue to deliberate." Subsequently, the jury returned a verdict, finding defendant guilty of all of the charged offenses.

¶ 22    On September 27, 2007, a sentencing hearing was held and the following colloquy took place:

> "Ms. Sims: *** I just wanted to put one thing on the record that the State proceeded on dangerous weapon and not a handgun or firearm.
>
> The Court: There is not the 15 year sentence on this case?
>
> [Assistant State's Attorney]: Correct, Your Honor."

¶ 23    The State then offered evidence in aggravation. The State presented three witnesses who testified that defendant had been involved in five different armed robberies between January 2004 and April 2004. In each case the armed robberies were of delivery men under

---

[3]The jury was instructed that to prove the offense of aggravated kidnapping, the State could prove *either* that defendant was armed with a dangerous weapon *or* that defendant also committed an *armed robbery* against Farraj.

-6-

circumstances nearly identical to the circumstances in this case. Based on the convictions and the evidence in aggravation, the trial court sentenced defendant to concurrent terms of 25 years, 15 years and 15 years, for aggravated kidnapping, aggravated vehicular hijacking, and armed robbery, respectively.

¶ 24    Defendant appealed. In the appellate court, defendant contended that the State failed to prove beyond a reasonable doubt that defendant was armed with a dangerous weapon because no weapon was recovered or introduced into evidence and because no testimony was provided as to the size and weight or metallic nature of the weapon.

¶ 25    The appellate court, after citing the charges as set forth in the indictment, considered whether the State presented sufficient evidence that defendant committed the offenses while armed with a dangerous weapon. The appellate court, relying exclusively on our decision in *People v. Ross*, 229 Ill. 2d 255 (2008), found that the evidence was insufficient to uphold defendant's convictions and remanded this cause to the circuit court with instructions that judgment and sentences be entered on the lesser-included offenses of kidnapping, vehicular hijacking, and robbery. No. 1-06-3159 (unpublished order under Supreme Court Rule 23).

¶ 26    We allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 27                          II. Analysis

¶ 28                        *State's Appeal*

¶ 29    The State contends that the appellate court erred when it relied on *Ross* to reverse defendant's convictions. The State argues that *Ross* is factually distinguishable from the case at bar and that the evidence, *i.e.*, the unimpeached and uncontroverted testimony of the victim, when viewed in a light most favorable to the prosecution, provides a sufficient basis upon which the jury could have found beyond a reasonable doubt that defendant used a gun as a dangerous weapon during the commission of the charged offenses. We agree.

¶ 30    In *Ross*, the defendant was arrested and indicted for armed robbery. He was tried in a bench trial. At trial, the victim testified that, around midnight on January 18, 1999, he was walking near his home on the north side of Chicago when he encountered the defendant. The defendant demanded the victim's wallet as he pointed "a black, very portable gun" at him. The victim described the gun as "small" and "something you can conceal."

¶ 31    The arresting officer testified that, shortly after the robbery occurred, the victim approached his police car and told him about the robbery. The officer then drove the victim back to the area where the crime took place and the victim spotted the defendant, who was then apprehended. The officer testified that, as he approached the defendant, he saw the defendant throw something into the nearby bushes. Upon inspection, the officer found the victim's wallet and a gun. The gun was not offered into evidence, but the officer described the gun as a "4.5 BB caliber gun with a three inch barrel." The inventory sheet in the record listed the gun as a "MARKSMAN PLAINSMAN *** 4.5 BB CAL. PELLET GUN 3 INCH BARREL BLACK IN COLOR," but did not mention any pellets. The trial court found the defendant guilty of armed robbery and sentenced him to eight years' imprisonment.

¶ 32    In a posttrial motion, the defendant argued that the State failed to prove beyond a

reasonable doubt that the gun was a dangerous weapon. The trial court denied this motion, stating:

> "[T]he testimony in the record was that the victim was in fear of his life when he observed what he thought to be a small gun that could be easily concealed. The officers recovered the gun. The victim observed the gun. Everything in the record suggested to this Court that the victim clearly believed it to be a dangerous weapon."

¶ 33     In a subsequent appeal, the appellate court found that the State failed to prove beyond a reasonable doubt that the pellet gun used by the defendant was a dangerous weapon. Affirming the appellate court's judgment, we said:

> "When presented with a challenge to the sufficiency of the State's evidence, a reviewing court must determine whether ' "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). Under this standard, the reviewing court does not retry the defendant, and the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence. See *People v. Emerson*, 189 Ill. 2d 436, 475 (2000). But merely because the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee the reasonableness of its decision. A conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of defendant's guilt. *People v. Smith*, 185 Ill. 2d 532, 542 (1999)." *Ross*, 229 Ill. 2d at 272.

¶ 34     In affirming the appellate court's ruling, we acknowledged that "our cases conclude that the trier of fact may make an inference of dangerousness based upon the evidence." *Id.* Nevertheless, we held that the evidence presented at defendant's bench trial was insufficient to support the trier of fact's inference that the "gun" the defendant possessed when he committed the robbery was a dangerous weapon. That is because the evidence presented at trial showed that the "gun" was, in fact, a small BB gun, with only a three-inch barrel. Further, because the BB gun was not entered into evidence and there was no evidence as to its composition or weight, there could be no inference that the BB gun could have been used as a bludgeon. Thus, the evidence presented at the trial actually precluded a finding that the "gun" used by the defendant was a dangerous weapon.

¶ 35     The situation is different in the case at bar. Here, the victim, Abdallah Farraj, was abducted in broad daylight. Farraj testified that defendant pointed a gun at him, forced him into the truck, and then held a gun to his head while he sat between defendant and his accomplice in the front of the truck. Farraj also testified that defendant pointed the gun at him when he was later forced into the cargo area of the truck. This evidence established that, for several minutes, Farraj had an unobstructed view of the weapon defendant had in his possession during the commission of the crimes. He testified that it was a gun.

¶ 36     We note, too, that there was no real dispute at trial that defendant possessed some type

-8-

of gun when he committed the crimes—during closing argument defense counsel did not argue that defendant did not possess a gun, only that it could not be known for sure whether the gun was real or a toy because no gun was ever recovered. However, given Farraj's unequivocal testimony and the circumstances under which he was able to view the gun, the jury could have reasonably inferred that defendant possessed a real gun. See *People v. Riley*, 219 Ill. App. 3d 482, 489 (1991); *People v. Thomas*, 189 Ill. App. 3d 365, 370-71 (1989).

¶ 37　　　Viewing the evidence, as set forth above, in a light most favorable to the State, the jurors, as the triers of fact, could have found beyond a reasonable doubt that defendant was armed with a dangerous weapon when he committed the offenses of kidnapping, vehicular hijacking and robbery. Accordingly, we reverse the appellate court's judgment and affirm the trial court's judgment finding defendant guilty of aggravated kidnapping, aggravated vehicular hijacking and armed robbery.

¶ 38　　　　　　　　　　　　　　　*Defendant's Cross-Appeal*

¶ 39　　　As noted above, defendant presents two arguments in his cross-appeal. First, he claims that, even if we reject the appellate court's judgment, we must, nonetheless, reduce his convictions to their lesser-included offenses because the allegations in his indictment varied from the State's proof at trial with regard to the type of dangerous weapon used. More specifically, defendant contends that "where the indictment specifically alleged the use of a 'firearm,' defense counsel formed her case around the inability of the State to prove that any weapon used was actually a gun" and that this was misleading because, at trial, the State was allowed to prove that defendant was armed with a "dangerous weapon" as opposed to a "firearm." Although defendant did not raise this claim in his posttrial motion, he contends that it is not forfeited because his ability to prepare a defense was prejudiced by this variance.

¶ 40　　　After reviewing the record, we find no evidence of a fatal variance. Defendant's indictment charged him with committing the offenses of armed robbery, aggravated kidnapping and aggravated vehicular hijacking "while armed with a dangerous weapon, to wit: a firearm, in violation of Chapter 720, Act 5, Section 18-2(a); 18-4(a); 10-2-A, of the Illinois Compiled Statutes 1992, as amended." As noted above, in 2004, when the crimes here were committed, the "15-20-25-to-life" sentencing enhancements contained in the 2000 amended statutes had been held unconstitutional. Thus, the State charged defendant under the predecessor statutes and defendant has never challenged the propriety of proceeding in this manner. Under the predecessor statutes, the State was required to prove that defendant committed the offenses of robbery, kidnapping and vehicular hijacking "while armed with a dangerous weapon." Moreover, defendant was not only charged under the predecessor statutes, he was prosecuted and convicted under them. The jury was fully instructed that, in order to find defendant guilty, it had to find that he committed the charged offenses "while armed with a dangerous weapon."

¶ 41　　　Because the indictment charged defendant with committing the offenses "while armed with a dangerous weapon, to wit: a firearm," defendant was fully apprised of the charges lodged against him. In addition, as explained above, the State sufficiently proved these charges by presenting witness testimony which established that defendant committed the

robbery, vehicular hijacking and kidnapping while armed with a dangerous weapon—a gun. For this reason, we find that there was no variance, fatal or otherwise, between the indictment and the proof at trial.

¶ 42    As an alternative argument, defendant contends that we should grant him a new trial because the trial court committed reversible error when it refused to rule, prior to trial, on his motion *in limine* regarding the admissibility of his previous convictions. While this case was pending on appeal to this court, we filed a decision in *People v. Averett*, 237 Ill. 2d 1 (2010). There we held that, regardless of whether the trial court had a blanket policy of refusing to rule on pretrial motions *in limine* to bar the introduction of prior convictions, review is foreclosed where, as here, the defendant chooses not to testify. Any abuse of discretion from the trial court's "blanket policy" is not preserved and is, therefore, not reviewable when the defendant chooses not to testify. *Averett*, 237 Ill. 2d at 22-23. *Averett* is directly on point and controlling, and disposes of this issue in its entirety.

¶ 43                                III. Conclusion

¶ 44    We affirm defendant's convictions for armed robbery, aggravated kidnapping and aggravated vehicular hijacking. Accordingly, we reverse the appellate court judgment which reduced defendant's convictions to their lesser-included offenses.

¶ 45    Appellate court judgment reversed;

¶ 46    circuit court judgment affirmed.

¶ 47    CHIEF JUSTICE KILBRIDE, dissenting:

¶ 48    I respectfully dissent from the majority opinion. The majority erroneously: (1) applies the preamended version of the statutes, applicable prior to 2000, when the offense defendant was alleged to have committed occurred in 2004, and (2) implicitly finds that defendant forfeited any challenge to the State's improper use of the outdated statutes.

¶ 49    Under the predecessor statute, a firearm was included within the category of a dangerous weapon. In 2000, however, the legislature amended the statutes and added what is commonly referred to as the firearm enhancements, or the "15/20/25-to-life" sentencing provisions as part of Public Act 91-404 (eff. Jan. 1, 2000). See *People v. Hauschild*, 226 Ill. 2d 63, 71 (2007). These revisions redefined the statutes by establishing different elements for crimes committed either with a firearm or with another type of dangerous weapon, thus expressly defining two distinct ways the State could choose to prosecute the offenses, with the offenses that contain the firearm element subject to enhanced sentences. Thus, the 2000 amendments established different elements for crimes committed either with a firearm or without a firearm. In my opinion the legislature's decision to exclude expressly firearms from its definition of the term "dangerous weapon" controls.

¶ 50    The new *sentencing* provisions were declared unconstitutional in *People v. Walden*, 199 Ill. 2d 392 (2002), and *People v. Moss*, 206 Ill. 2d 503 (2003), prior to the date of defendant's 2004 indictment. Before defendant's 2006 trial, *Walden* and *Moss* were overruled in *People*

*v. Sharpe*, 216 Ill. 2d 481 (2005), retroactively reviving the sentencing provisions of the 2000 amendments. *Hauschild*, 226 Ill. 2d at 71. The constitutional attacks involved in *Walden* and *Moss* were only to the 15/20/25-to-life sentence enhancement provisions, not to the substantive provisions of the amended statutes. Even though *Hauschild* once again rendered the firearm sentencing enhancements void *ab initio*, it explained that the substantive provisions of the statutes defining the elements of the offenses remained intact. See *Hauschild*, 226 Ill. 2d at 79-80 ("despite the proportionality attacks to the 15/20/25-to-life sentence enhancements, *the statutes at issue remained intact* and defendant was therefore on notice that his conduct might fall within their scope" (emphasis added)).

¶ 51   While the majority recognizes that the sentencing challenges to the 2000 amendments were to the enhanced sentencing provisions only (*supra* ¶ 8), it fails to acknowledge that the substantive provisions at issue in this case remained intact. Consequently, the majority fails to consider whether it is proper to prosecute a defendant under the substantive provisions of statutes that were not in effect either at the time defendant committed the offenses or at the time of defendant's trial. The opinion simply assumes that a defendant can be properly prosecuted and convicted under a version of the statutes that was no longer in effect when a defendant fails to object. *Supra* ¶¶ 8, 40.

¶ 52   The majority fails to acknowledge, let alone explain, how defendant's lack of objection to being prosecuted under the wrong criminal statutes affects his conviction. Rather, the majority implicitly finds that defendant forfeited any challenge to the State's improper use of the outdated statutes.

¶ 53   Unlike the majority, I would hold that we are constrained by the elements of the offenses in the statutes applicable after 2000 and governing the alleged offense here committed in 2004. Under the amended version of the statutes, defendant could be found guilty of these crimes if armed either with a dangerous weapon, "other than a firearm," or while armed with a firearm. Because the State limited its argument on appeal to the dangerous weapon prong of the statute, we must decide whether the State proved defendant guilty of using a dangerous weapon that was not a firearm.

¶ 54   It is undisputed that there was no evidence presented at trial of the use of a nonfirearm dangerous weapon. To the contrary, all of the evidence at trial showed that defendant committed the crime with a firearm. However, under the applicable amended statutory language, a firearm is not included in the category of a dangerous weapon. There was no evidence at trial that defendant committed the crimes while armed with a dangerous weapon, *other than a firearm*. Moreover, the jury was instructed only on the use of a dangerous weapon and was not instructed on the use of a firearm.

¶ 55   Based on this record, the applicable statutes, and the State's arguments, I would conclude that the State failed to prove defendant guilty of any aggravated statutory offense involving a dangerous weapon other than a firearm. For the foregoing reasons, I respectfully dissent.

¶ 56   JUSTICE THEIS joins in this dissent.