2015 IL App (3d) 140036

Opinion filed October 5, 2015

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-14-0036 Circuit No. 11-CF-122 |
| KEITH CLARK, | ) ) ) | Honorable Stephen A. Kouri, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justices O'Brien and Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Keith Clark, argues that the evidence at his trial was insufficient to prove

beyond a reasonable doubt that he was armed with a firearm during the commission of a robbery.

Additionally, defendant argues that the trial court erred in failing to give a jury instruction

defining "firearm" and that defense counsel's failure to tender such an instruction constituted

ineffective assistance of counsel.  Defendant also argues that certain fines and fees were

improperly assessed against him.

¶ 2       We affirm defendant's conviction, as we find that: (1) the evidence at trial, when viewed in the light most favorable to the State, was sufficient to prove beyond a reasonable doubt that defendant carried a firearm; (2) the failure to give a jury instruction defining "firearm" did not constitute plain error; and (3) the failure of defense counsel to tender a jury instruction did not prejudice defendant. Pursuant to the State's confession of error, we remand the cause for proper entry of an order for fines and fees.

¶ 3                                                    FACTS

¶ 4       Defendant was charged by indictment with armed robbery (720 ILCS 5/18-2(a)(2) (West 2010)), alleging that defendant, while armed with a rifle, took property from the person or presence of Habib Bilfaqi by threatening the imminent use of force at a time when defendant was 15 years of age or older but under 17 years of age.

¶ 5       A jury trial was held. Bilfaqi testified that he was working as a delivery driver for Bacci's, a pizzeria, on the evening of the incident. Between 2 and 3 a.m., Bilfaqi was driving his car to deliver two pizzas to a customer at an apartment complex. Pavel Chernyshev, a coworker, was riding in Bilfaqi's passenger seat. Bilfaqi called the customer three to five times because he was having trouble finding the address the customer had given him. Bilfaqi believed the customer sounded male. Bilfaqi drove to one location, and the customer told him to drive to a different one. Bilfaqi reached the second location and the customer was not there. Eventually, the customer said that he saw Bilfaqi's car and told him to stop.

¶ 6       Bilfaqi got out of the car, still talking to the customer on the phone. Bilfaqi was holding the pizza bag. The customer told him to come up to the door. Bilfaqi went up to the apartment door and waited for awhile. There was another apartment door to his right, but to his left was just the corner of the building. The area was fairly dark, but there were some lights. While still

2

on the telephone, Bilfaqi asked the customer where he was. A man holding a black rifle then approached Bilfaqi from his left. The man was approximately six feet tall, weighed 175 to 180 pounds, was African American, appeared to be in his mid-twenties, and had a "soul patch." He was wearing a black hoodie or jacket, black pants, and a black hat. Nothing was covering his face. He stopped approximately 20 to 30 feet from Bilfaqi. Bilfaqi later identified defendant as the man who robbed him.[1]

¶ 7        The man pointed the rifle directly at Bilfaqi; the rifle had a red laser pointer for tracking, which was lit up. The man told Bilfaqi to drop the pizza bag and money. Bilfaqi dropped the bag and the money he was carrying in his pockets—approximately $20 to $30—and ran to his car. The man said, "Only $20?" and made some derogatory comments. The entire incident lasted approximately five seconds.

¶ 8        Chernyshev testified that he was riding in the passenger seat of Bilfaqi's car on the evening in question. Chernyshev was allowed to go home early because it had been snowing heavily earlier that night, and Bilfaqi offered to give him a ride home after he completed his last delivery. Once Chernyshev and Bilfaqi reached the apartment complex where they were to deliver the pizza, they had difficulty locating the correct apartment. The customer directed Chernyshev and Bilfaqi to three or four different apartments via cell phone.

¶ 9        At the final apartment, Bilfaqi walked up to the door. Chernyshev remained in the car approximately 50 yards away from Bilfaqi. It was not snowing at that time. Chernyshev could see someone standing at the side of the building, peeking around the corner. Chernyshev could "plainly see" that the man around the corner had a gun. Chernyshev said the gun was a "rifle" and described it as "something you don't carry on the street." Chernyshev did not yell out to

_____

[1]Bilfaqi's identification of defendant is not at issue on appeal.

Bilfaqi because he was concerned it would be unsafe for Bilfaqi if he did. The apartment complex had recessed lighting. The man with the rifle walked up to Bilfaqi and pointed the rifle at him. The man was African American and was wearing a hoodie or dark sweater with a hood, a hat, and dark pants. Chernyshev stated that the hat could have been the man's hair. The man said something to Bilfaqi like "that's all you got?" and then said some derogatory things. Bilfaqi dropped the pizza bag and ran toward the car. Chernyshev saw the man with the rifle go back around the building the same way he came.

¶ 10    Detective Timothy Moore testified that a firearm was located in another neighborhood the day after the incident. However, this was ultimately not linked to the offense. No firearm was introduced into evidence at trial.

¶ 11    During closing arguments, the prosecutor argued that the rifle described by Bilfaqi and Chernyshev was "an operating firearm" as opposed to "a toy or something." The prosecutor admitted that no gun was recovered that could be definitively linked to the crime, but argued that the jury could infer through circumstantial evidence that the rifle was a real gun. The prosecutor argued that if defendant did not have a real firearm and was going to use a toy, he would have picked something small and easy to conceal. The prosecutor contended that defendant used the rifle because it was the only firearm he had available. In other words, the rifle was a choice of last resort because it was large and could not be concealed within defendant's clothing. The prosecutor also argued that it would be unlikely for someone to affix a laser to a toy rifle. Additionally, the prosecutor pointed out that neither Bilfaqi nor Chernyshev hesitated in identifying the object as a rifle and neither expressed belief that the rifle could have been plastic or a fake.

¶ 12    Defense counsel argued during closing arguments that there was insufficient evidence to determine whether the gun used in the robbery was real or fake. Defense counsel pointed out that if someone had a fake gun that he wanted to make look real, he might add things like a laser pointer to make it look more realistic.

¶ 13    During rebuttal, the prosecutor repeated his argument as to why the rifle was a real gun. The prosecutor then stated: "So don't get into this whole is it a real gun, is it not a real gun, was he looking at the face, was he looking at the gun. It was a rifle. That's a firearm. This was an armed robbery."

¶ 14    After closing arguments, jury instructions were given. An instruction defining "firearm" was not proffered by the defense or given to the jury. The jury found defendant guilty of armed robbery. Defendant was sentenced to 24 years' imprisonment.

¶ 15                                    ANALYSIS

¶ 16                          I. Sufficiency of the Evidence

¶ 17    On appeal, defendant initially argues that the State failed to prove beyond a reasonable doubt that defendant carried or possessed a firearm while committing the robbery. Specifically, defendant argues that given the dim lighting at the scene of the robbery, the distance of Bilfaqi and Chernyshev from defendant, the brief nature of the encounter, and the fact that no gun was introduced into evidence, the testimony of Bilfaqi and Chernyshev was insufficient evidence to support the jury's finding that defendant carried a firearm within the statutory definition. See 430 ILCS 65/1.1 (West 2010); 720 ILCS 5/2-7.5 (West 2010) (definition of "firearm"). Upon review, we find that the evidence viewed in the light most favorable to the State established beyond a reasonable doubt that defendant possessed a firearm during the robbery.

¶ 18       When presented with a challenge to the sufficiency of the evidence, we consider

" 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "

(Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v.

Virginia*, 443 U.S. 307, 319 (1979)). "This same standard of review applies regardless of

whether the evidence is direct or circumstantial ***." *People v. Cooper*, 194 Ill. 2d 419, 431

(2000).[2]

¶ 19       To convict defendant of armed robbery, the State was required to prove that defendant

knowingly took property from the person or presence of Bilfaqi by threatening the imminent use

of force while armed with a firearm. 720 ILCS 5/18-2(a)(2) (West 2010). "Firearm" is defined

by statute in section 1.1. of the Firearm Owners Identification Card Act (FOID Act) as follows:

           " 'Firearm' means any device, by whatever name known, which is

           designed to expel a projectile or projectiles by the action of an explosion,

           expansion of gas or escape of gas; excluding, however:

                      (1) any pneumatic gun, spring gun, paint ball gun or BB gun which

                      either expels a single globular projectile not exceeding .18 inch in

[2]Citing *People v. Smith*, 191 Ill. 2d 408, 411 (2000), defendant argues that we should

apply a *de novo* standard of review because the facts are not in dispute. However, "[e]ven if the

facts are not disputed, if reasonable persons could draw different inferences from them, it is left

to the trier of fact to resolve those questions." *People v. Brown*, 345 Ill. App. 3d 363, 366

(2003). Here, there is a question of fact, namely whether Bilfaqi's and Chernyshev's testimony

that defendant carried a rifle supported an inference that the rifle was a real firearm rather than a

toy or fake.

diameter and which has a maximum muzzle velocity of less than 700 feet per second or breakable paint balls containing washable marking colors;

(2) any device used exclusively for signalling or safety and required or recommended by the United States Coast Guard or the Interstate Commerce Commission;

(3) any device used exclusively for the firing of stud cartridges, explosive rivets or similar industrial ammunition; and

(4) an antique firearm (other than a machine-gun) which, although designed as a weapon, the Department of State Police finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon."

430 ILCS 65/1.1 (West 2010).

See also 720 ILCS 5/2-7.5 (West 2010).

¶ 20       "The State does not have to prove the gun is a firearm [within the meaning of the statutory definition] by direct or physical evidence; unequivocal testimony of a witness that the defendant held a gun is circumstantial evidence sufficient to establish that a defendant was armed during a robbery." *People v. Wright*, 2015 IL App (1st) 123496, ¶ 74. In *Wright*, the court held that the evidence was sufficient to prove that the defendant was armed with a gun that met the statutory definition of "firearm" during a robbery where the only evidence of the gun was the testimony of three witnesses that they saw the gun, two of which testified they had seen guns before, and one of which testified that he was " '100% sure' " that the gun was an actual firearm. *Id.* ¶ 76.

7

¶ 21    Similarly, in *Fields*, the court held that the evidence was sufficient to prove beyond a reasonable doubt that the defendant possessed a firearm within the statutory definition where a witness testified that the defendant held a gun during the robbery and there was no evidence suggesting that the gun fell within the statutory exceptions to the general, broad definition of "firearm" in section 1.1 of the FOID Act (430 ILCS 65/1.1 (West 2008)). *People v. Fields*, 2014 IL App (1st) 110311, ¶ 37. Additionally, in *Toy*, the court held that there was sufficient evidence for the jury to conclude that the defendant was armed with a firearm within the definition in section 1.1 of the FOID Act (430 ILCS 65/1.1 (West 2004)) during a sexual assault where the victim and another witness testified that the defendant had a gun and the victim testified the defendant threatened to kill her and she felt something pressed against her head during the assault. *People v. Toy*, 407 Ill. App. 3d 272, 288-89 (2011); see also *People v. Lee*, 376 Ill. App. 3d 951, 955 (2007) (holding that there was sufficient evidence to establish that the defendant was armed with a firearm during a robbery where one witness unequivocally testified that the defendant was holding a handgun and threatened to shoot the victim and two other witnesses testified that the defendant had a silver object in his hand).

¶ 22    In the instant case, both Bilfaqi and Chernyshev testified that they observed that the person who robbed Bilfaqi was carrying a "rifle." Bilfaqi described the rifle as black with a red laser pointer. Bilfaqi testified that the man with the rifle was approximately 20 to 30 feet away from him and that the area was fairly dark, but there was some light. Bilfaqi was able to see well enough to observe the man's face, the clothing he was wearing, his race, and his facial hair. Chernyshev testified that the area had recessed lighting and that he was approximately 50 yards away from Bilfaqi and the robber during the incident. Chernyshev testified that he could "plainly see" the rifle and described the rifle as "something you don't carry on the street."

8

¶ 23    "[I]n weighing evidence, the trier of fact is not required to disregard inferences which flow normally from evidence before it [citation], nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt [citation]." *People v. Campbell*, 146 Ill. 2d 363, 380 (1992).  The jury found Bilfaqi and Chernyshev to be credible witnesses and accepted their unequivocal testimony that they observed defendant carry a "rifle" and their ability to identify the item as a "rifle."  When viewed in the light most favorable to the State, the testimony of Bilfaqi and Chernyshev was sufficient evidence for the jury to find beyond a reasonable doubt that defendant possessed a firearm during the robbery.

¶ 24    We reject defendant's argument that the eyewitness testimony of Bilfaqi and Chernyshev that defendant was carrying a "rifle" was insufficient evidence from which the finding could be made that the object was a "firearm" rather than an air gun or BB gun.  In support of his contention, defendant cites federal and New York cases in which police officers mistook fake guns for real guns and includes a photograph of an air rifle that would not be considered a "firearm" under the statutory definition.  However, these things were not offered as evidence at trial and were never considered by the jury.  We hold that the question of whether eyewitness testimony is sufficient to establish that an object is a "firearm" is a question of fact properly determined by the jury.

¶ 25    Additionally, defendant contends that the reasoning in *Lee*, *Fields*, *Toy*, and *Wright* was flawed.  Defendant believes that *Lee, Fields, Toy,* and *Wright* were incorrectly decided because they relied on, or cited cases that relied on, *People v. Thomas*, 189 Ill. App. 3d 365 (1989).  The *Thomas* court held that the testimony of a credible eyewitness is sufficient to establish that a defendant carried a firearm during a robbery.  *Id.* at 371.  Defendant contends that *Thomas* is irrelevant because it involved the prior version of the armed robbery statute which required the

9

State to prove that defendant was armed with a "dangerous weapon," whereas the current version of the statute requires the State to prove defendant was armed with a "firearm," which is a statutorily defined term. See 430 ILCS 65/1.1 (West 2010); 720 ILCS 5/2-7.5 (West 2010) (definition of "firearm").

¶ 26    However, as the court in *Fields* noted, "[w]hile [the] statutory definition excludes some specific types of firearms, the term 'firearm' is defined broadly, including 'any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas.' " *Fields*, 2014 IL App (1st) 110311, ¶ 36 (quoting 430 ILCS 65/1.1 (West 2008)). See also *Toy*, 407 Ill. App. 3d at 288. Like the courts in *Fields*, *Toy*, *Lee*, and *Wright*, we find that a jury may reasonably infer from eyewitness testimony and other circumstantial evidence that a "firearm" is within the statutory definition.

¶ 27    Insofar as defendant attempts to distinguish *Fields, Toy, Lee,* and *Wright* on their facts, including differences in the size of the guns involved and the witnesses' opportunities to view the guns, we reassert our finding that the evidence presented at trial, when viewed in the light most favorable to the State, was sufficient for a rational jury to find beyond a reasonable doubt that defendant was armed with a firearm during the commission of the robbery.

¶ 28    In coming to this conclusion, we reject defendant's reliance on *People v. Ross*, 229 Ill. 2d 255 (2008). Defendant cites *Ross* for its reasoning that a finding that a gun is a dangerous weapon must focus on the "objective nature of the gun" rather than "the subjective feelings of the victim." *Id.* at 277. *Ross* interpreted a prior version of the armed robbery statute, which defined "armed robbery" as the commission of a robbery while armed with a "dangerous weapon." *Id.* at 272 (citing 720 ILCS 5/18-1, 18-2(a) (West 2004)). The *Ross* court held that the evidence was insufficient to prove that the gun defendant used during the robbery was a "dangerous weapon"

where the gun used in the robbery was recovered and revealed to be a BB gun with a 3-inch barrel and the victim described the gun as " 'very portable,' " " 'small,' " and " 'something you can conceal.' " *Id.* at 258. Here, unlike in *Ross*, no BB gun or other toy gun was recovered and linked to the crime which could *potentially* have precluded the jury from inferring that the gun used to commit the crime was not a toy gun.

¶ 29    We also reject defendant's reliance on *People v. Crowder*, 323 Ill. App. 3d 710, 712 (2001), for the proposition that Illinois case law rejects the notion that "everything that looks like a gun is a gun." In *Crowder*, the only issue on appeal was whether the trial court properly dismissed the indictment, which charged the defendant with unlawful possession of weapons by a felon and willful use of weapons, where the State destroyed the gun that formed the basis of the charges after the defendant requested to view it. *Id.* at 711-12. The *Crowder* court reasoned that without being able to inspect the weapon, the defendant would not be able to refute the State's contention that the weapon was a firearm. *Id.* at 712. Unlike *Crowder*, this case does not involve the destruction of a firearm sought by a defendant in discovery but rather involves the question of whether the evidence presented at trial was sufficient for a jury to find beyond a reasonable doubt that defendant possessed a firearm during the robbery. For the reasons discussed above, we have found that the evidence was sufficient.

¶ 30                      II. Jury Instruction Defining "Firearm"

¶ 31    Next, defendant argues that the trial court erred in failing to give a jury instruction defining the term "firearm." Defendant concedes that he forfeited the issue by failing to request the instruction at trial or raise the issue in a posttrial motion. See Ill. S. Ct. R. 366(b)(2)(i), (iii) (eff. Feb. 1, 1994). However, defendant asks that we review the trial court's failure to tender the instruction for plain error pursuant to Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013).

11

Alternatively, defendant contends that defense counsel's failure to tender a jury instruction defining "firearm" constituted ineffective assistance of counsel. We reject both arguments.

¶ 32                    A. Jury Instruction

¶ 33        First, we address whether the trial court's failure to *sua sponte* offer a jury instruction defining "firearm" constituted plain error. Forfeited errors are reviewable under the plain error doctrine where: (1) "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error"; or (2) "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Belknap*, 2014 IL 117094, ¶ 48. "The first step of plain-error review is determining whether any error occurred." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 34        Here, no error occurred when the trial court failed to *sua sponte* give a jury instruction defining "firearm." "When words used in a jury instruction have a commonly understood meaning, the court need not define them with the use of additional instructions; this is particularly true where the pattern jury instructions do not provide that an additional definition is necessary." *People v. Manning*, 334 Ill. App. 3d 882, 890 (2002). Although the statutory definition of the term "firearm" contains some limited exceptions, the term is defined broadly. Further, "firearm" has a commonly understood meaning that is consistent with the broad statutory definition.

¶ 35        Additionally, we note that Illinois Pattern Jury Instructions, Criminal, Nos. 14.05 and 14.06 (4th ed. 2000) (hereinafter, IPI Criminal 4th Nos. 14.05 and 14.06) (definition of armed robbery and issues in armed robbery) previously tracked the language of the prior armed robbery

12

statute (720 ILCS 5/18-2 (West 1998)), which defined "armed robbery" as the commission of a robbery while armed with a dangerous weapon. However, IPI Criminal 4th Nos. 14.05 and 14.06 were amended, with an approval date of January 24, 2014, to reflect the current version of the armed robbery statute which designates different sentencing consequences for armed robbery with "a dangerous weapon other than a firearm," a firearm, a firearm discharged during the offense, and a firearm discharged during the offense proximately causing great bodily harm, permanent disability, permanent disfigurement, or death to another person (720 ILCS 5/18-2 (West 2012)). Even with the amendment, the committee comments to IPI Criminal 4th Nos. 14.05 and 14.06 do not require that a definition for "firearm" be given when the offense involves a firearm, even though a pattern instruction defining "firearm" pursuant to section 1.1 of the FOID Act exists. See Illinois Pattern Jury Instructions, Criminal, No. 18.35G (4th ed. 2000) (defining "firearm").

¶ 36        Even if we were to accept defendant's position that it was error for the trial court to fail to *sua sponte* give a jury instruction defining "firearm," we find that neither prong of plain error review applies. The evidence in this case was not closely balanced with regard to the issue of whether defendant carried a firearm during the robbery. As discussed above, the unequivocal testimony of Bilfaqi and Chernyshev was sufficient to establish that defendant was armed with a firearm during the robbery. Additionally, no evidence was presented at trial suggesting that the rifle observed by Bilfaqi and Chernyshev was anything other than a real firearm.

¶ 37        We also find that review is not warranted under the second prong of plain error analysis. Our supreme court has equated the second prong of plain error review with structural error. *Thompson*, 238 Ill. 2d at 613-14. A structural error is " 'a systemic error which serves to "erode the integrity of the judicial process and undermine the fairness of the defendant's trial." ' " *Id.* at

13

614 (quoting *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009), quoting *People v. Herron*, 215 Ill. 2d 167, 186 (2005)).  The supreme court has recognized structural error only in a very limited class of cases, including "a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction."  *Id.* at 609 (citing *Washington v. Recuenco*, 548 U.S. 212, 218 n.2 (2006)).  The United States Supreme Court has held that a jury instruction that omits an element of the offense does not rise to the level of structural error but rather is subject to harmless error review.  *Neder v. United States*, 527 U.S. 1, 8-10 (1999).  Thus, we find that merely failing to give a jury instruction defining an element of the offense does not rise to the level of structural error.

¶ 38                                 B. Ineffective Assistance of Counsel

¶ 39          Alternatively, defendant argues that defense counsel's failure to request a jury instruction defining firearm constituted ineffective assistance of counsel.  Upon review, we find that defendant was not prejudiced by counsel's failure to request such an instruction.

¶ 40          We use the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), in assessing claims of ineffective assistance of counsel.  *People v. Coleman*, 183 Ill. 2d 366, 397 (1998).  Thus, to establish ineffective assistance of counsel, a defendant must demonstrate both that: (1) "counsel's performance was deficient"; and (2) "but for defense counsel's deficient performance, the result of the proceeding would have been different."  *Id.*  "Courts *** may resolve ineffectiveness claims under the two-part *Strickland* test by reaching only the prejudice component, for lack of prejudice renders irrelevant the issue of counsel's performance."  *Id.* at 397-98.

14

¶ 41　　　　We find that defendant has not demonstrated that he was prejudiced by counsel's failure to seek a jury instruction defining "firearm." Defendant contends that given the closeness of the evidence regarding whether a firearm was involved in the robbery, the incomplete jury instructions may have swayed the outcome of the trial. As discussed above, we do not find that the evidence in this case was closely balanced with regard to whether a firearm was used. The unequivocal testimony of Bilfaqi and Chernyshev that defendant carried a "rifle," as well as their testimony concerning the circumstances surrounding the robbery, was sufficient evidence to prove that the "rifle" was a firearm.

¶ 42　　　　　　　　　　　　　III. Fines and Fees

¶ 43　　　　Finally, defendant argues that certain fines were improperly imposed against him by the circuit clerk after sentencing and were not incorporated into a signed judgment order. Defendant also argues that he is entitled to a $5-per-day presentence incarceration credit for 947 days spent in custody. The State concedes that the fines and fees assessed against defendant must be vacated and the matter remanded for entry of a proper order enumerating fines, fees, and costs. Upon consideration of the parties' briefs and after a review of the record, we accept the State's concession of error.

¶ 44　　　　Therefore, we vacate all of the fines and fees assessed against defendant, and we remand the cause with the following directions: (1) the trial court shall expressly impose any and all fines; (2) the circuit clerk shall specifically name each individual fee imposed as a court cost by the clerk; (3) the amount of each fine, fee, assessment or court cost defendant has been ordered to pay as part of the sentence shall be set forth in a written order bearing the court's signature; (4) the written order shall provide the statutory authority for each individual financial charge; and

15

(5) the trial court shall calculate and offset defendant's fines by the appropriate amount of $5-per-day presentence incarceration credit.  See 725 ILCS 5/110-14 (West 2012).

¶ 45                                    CONCLUSION

¶ 46          The judgment of the circuit court of Peoria County is affirmed in part, vacated in part, and remanded with directions to enter a proper order for fines and fees.

¶ 47          Affirmed in part and vacated in part.

¶ 48          Remanded with directions.