2021 IL App (1st) 191733-U

No. 1-19-1733

Order filed July 6, 2021

Modified upon denial of rehearing August 16, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 6740 |
| | ) | |
| GEORGE TROUT, | ) | Honorable |
| | ) | Michele Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Justices Hyman and Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court properly dismissed defendant's postconviction petitions when he failed to make a substantial showing that he was denied the effective assistance of appellate counsel.

¶ 2    Defendant George Trout appeals from the circuit court's dismissal of his petition and

supplemental petition for relief filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS

5/122-1 *et seq*. (West 2016)). Defendant alleges the court erroneously granted the State's motion

to dismiss because he made a substantial showing of ineffective assistance of counsel on direct appeal. Specifically, he claims that appellate counsel should have raised the trial court's failure to *sua sponte* instruct the jury on the definition of a "firearm."

¶ 3 Defendant was charged with the offense of armed robbery in that he knowingly took currency from Rosemary Smith (Rosemary) by the use of force or by threatening the imminent use of force and he carried on or about his person or was otherwise armed with a firearm. See 720 ILCS 5/18-2(a)(2) (West 2010). Defendant elected to have a jury trial.

¶ 4 On February 8, 2011, Rosemary and her daughter Stephanie Smith (Stephanie) contacted a Craigslist seller regarding a 2002 Taurus offered for $1500 and agreed to meet the seller that evening in a restaurant parking lot. Defendant arrived alone in the Taurus at the designated time and Rosemary offered him $1300 for the car. Defendant accepted and asked Rosemary and Stephanie if they wanted to test drive the car. Rosemary was surprised that defendant drove the car for the test drive, but did not "think too much of it" at the time. Defendant turned into a "very dark" residential street and slowed down. When the vehicle stopped, Rosemary tried to exit from the back seat, but a woman approached and blocked her from exiting. She also saw a masked man on the driver's side of the vehicle holding a "big, black gun" approximately 12 inches long.

¶ 5 After Rosemary exited the vehicle, the woman said, " 'You don't want to die over money. Hand over the money.' " Rosemary handed $1800 to the woman from her pocket. Stephanie exited the front seat of the vehicle but reached back in to retrieve her purse. Defendant told the masked man with the firearm to grab her purse, and a struggle ensued. The masked man eventually let go of the purse, and he, the woman and defendant drove off in the Taurus. Rosemary and Stephanie returned to their vehicle and contacted the police. Rosemary was "very familiar" with guns. She

had seen guns before and knew what they looked like. She had also purchased "fake guns" for her son and knew the difference between a "fake and a real gun." Stephanie corroborated that the object the masked man held "looked like a gun."

¶ 6     At the jury instruction conference, the court granted the defendant's request to instruct the jury on the lesser-included offense of robbery, but no one asked for an instruction on the definition of "firearm." The jury was instructed in accordance with Illinois Pattern Jury Instructions, Criminal, Nos. 14.05 and 14.06 (4th ed. 2000) (hereinafter IPI Criminal Nos. 14.05 and 14.06), in effect at the time of trial.

¶ 7     The jury found defendant guilty of armed robbery. Defendant filed a motion for new trial, which was denied, and the trial court sentenced defendant to 23 years in prison.

¶ 8     On direct appeal, defendant argued that his conviction should be reduced to robbery because the State failed to establish that the weapon used in the offense was a firearm. We affirmed the judgment of the trial court. See *People v. Trout*, 2015 IL App (1st) 131418-U.

¶ 9     On September 29, 2016, defendant filed a *pro se* postconviction petition alleging, in relevant part, that the trial court should have *sua sponte* instructed the jury regarding the "legal definition" of a firearm. He also argued that trial counsel should have asked that the jury be instructed on the statutory definition of "firearm" and that appellate counsel was ineffective in failing to raise this issue on appeal. The circuit court docketed the petition and appointed postconviction counsel.

¶ 10     On June 29, 2018, postconviction counsel filed a supplemental postconviction petition and a certificate pursuant to Supreme Court Rule 651(c) (eff. July 1, 2017). The supplemental petition alleged that defendant was denied effective assistance on direct appeal when counsel failed to

challenge the foundation of certain evidence. On September 14, 2018, the State filed a motion to dismiss.

¶ 11     On May 17, 2019, the circuit court granted the State's motion, finding that "all defendant's claims in his pro se petition are all in the record. They all could have been brought on direct appeal, and they lack merit as well." The court found that the "jury was properly instructed." With respect to defendant's claims of ineffective assistance of appellate counsel, the court concluded, "there is no showing that appellate counsel was ineffective for not raising the numerous issues that the defendant wished to be raised *** [a]nd Defendant also doesn't show *** that he was prejudiced by failing to raise these issues."

¶ 12     The Act provides a procedural mechanism through which a defendant may assert a substantial denial of his constitutional rights in the proceedings which resulted in his conviction. 725 ILCS 5/122-1 *et seq*. (West 2016). At the first stage of proceedings, the circuit court may summarily dismiss a defendant's petition only if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016). If, as here, the petition advances to the second stage, a defendant bears the higher burden of making a "substantial showing" of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35. At this stage, the court must liberally construe the record in the defendant's favor and accept all well-pleaded facts in the petition and accompanying affidavits as true unless such facts are positively rebutted by the trial record. *People v. Brown*, 2020 IL App (1st) 170980, ¶ 41. We review the dismissal of a petition without an evidentiary hearing *de novo*. See *People v. Begay*, 2018 IL App (1st) 150446, ¶ 34.

¶ 13     A claim of ineffective assistance presented in a postconviction petition is judged under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on this type of

claim, a defendant must show counsel's failure to raise an issue on direct appeal was objectively unreasonable, and that he was prejudiced by this decision. *People v. Harris*, 206 Ill. 2d 293, 326 (2002). In other words, a defendant must establish that but for counsel's error, there is a reasonable probability that his appeal would have been successful. *People v. English*, 2013 IL 112890, ¶ 33.

¶ 14    Generally, counsel's decision not to raise an issue on appeal is given substantial deference. *Harris*, 206 Ill. 2d at 326. It is not incompetence to refrain from raising issues which in counsel's judgment are without merit, unless counsel's appraisal is patently wrong. *People v. Simm*s, 192 Ill. 2d 348, 362 (2000); see also *People v. Williams*, 209 Ill. 2d 227, 243 (2004) (rather than raise "every conceivable issue on appeal," appellate counsel "exercise[s] professional judgment to select from the many potential claims of error that might be asserted"). Absent a showing that the underlying issue is meritorious, a defendant is not prejudiced by appellate counsel's failure to raise it on appeal. *People v. Barrow*, 195 Ill. 2d 506, 523 (2001).

¶ 15    Relying on the "strong mandate" that a jury is to be fully and properly instructed, defendant argues that it is reasonably probable that a new trial would  have been ordered on direct appeal if appellate counsel had challenged the trial court's failure to *sua sponte* instruct the jury on the statutory definition of the term "firearm."

¶ 16    "The purpose of jury instructions is to provide the jury with correct legal principles that apply to the evidence, thus enabling the jury to reach a proper conclusion based on the applicable law and the evidence presented in a case." *People v. Jackson*, 331 Ill. App. 3d 279, 290 (2002). The responsibility to prepare jury instructions "primarily" rests on the parties rather than the trial court. *People v. Underwood*, 72 Ill. 2d 124, 129 (1978). As a general rule, the court has no obligation to instruct the jury on its own motion. *People v. Parks*, 65 Ill. 2d 132, 137 (1976).

"Generally, the only situations where a fair trial requires the court to *sua sponte* offer an instruction include 'seeing that the jury is instructed on the elements of the crime charged, on the presumption of innocence, and on the question of the burden of proof.' " *People v. Turner*, 128 Ill. 2d 540, 562-63 (1989) (quoting *Parks,* 65 Ill. 2d at 137).

¶ 17    "[A] defendant forfeits review of any putative jury instruction error if the defendant does not object to the instruction or offer an alternative instruction at trial and does not raise the instruction issue in a posttrial motion." *People v. Herron*, 215 Ill. 2d 167, 175 (2005). Moreover, pursuant to Supreme Court Rule 366(b)(2)(i) (eff. Feb. 1, 1994), "[n]o party may raise on appeal the failure to give an instruction unless the party shall have tendered it."

¶ 18    Although it is undisputed that trial counsel did not tender an instruction on the definition of a firearm, defendant contends that the trial court erred in failing to instruct the jury, *sua sponte*, on that term. Since this claim was never raised in the trial court, it was forfeited for purposes of defendant's direct appeal. See, *e.g.*, *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve an error for appellate review, a defendant must make both a contemporaneous objection and raise the issue in a posttrial motion). Appellate counsel would have had to establish that the jury instruction claim constituted plain error in order to raise it on direct appeal.

¶ 19    The plain error doctrine permits this court to consider an unpreserved error when an error occurred and (1) the evidence was so closely balanced that the error alone threatened to tip the scales of justice against the defendant, or (2) the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007). The first step in

plain error review is to determine whether an error occurred. See *People v. Hood*, 2016 IL 118581, ¶ 18 (without error, there can be no plain error).

¶ 20    "When words used in a jury instruction have a commonly understood meaning, the court need not define them with the use of additional instructions; this is particularly true where the pattern jury instructions do not provide that an additional definition is necessary." *People v. Manning*, 334 Ill. App. 3d 882, 890 (2002). While the statutory definition of the term "firearm" contains some limited exceptions, the term is defined "broadly" and has "a commonly understood meaning that is consistent with the broad statutory definition." *People v. Clark*, 2015 IL App (3d) 140036, ¶ 34.

¶ 21    The trial court provided the jury with IPI Criminal Nos. 14.05 and 14.06, which were in effect at the time of trial. These instructions defined armed robbery and the issues in armed robbery. The committee notes to IPI Criminal Nos. 14.05 and 14.06 did not require that a definition for "firearm" be given when the offense involved a firearm, even though there is a pattern instruction defining "firearm" consistently with section 1.1 of the Firearm Owners Identification Card Act. See Illinois Pattern Jury Instructions, Criminal, No. 18.35G (4th ed. 2000) (citing 430 ILCS 65/1.1 (West 1999)) (hereinafter IPI Criminal No. 18.35G) (defining "firearm"); *People v. Wright*, 2017 IL 119561, ¶ 88 n.6.

¶ 22    IPI Criminal No. 18.35G defining "firearm" states: "The word 'firearm' means any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas, or escape of gas. [The term does not include _____.]" Illinois Pattern Jury Instructions, Criminal, No. 18.35G (4th ed. 2000). The committee notes to that instruction indicate that the bracketed portion should be used "when appropriate." *Id.*

¶ 23 Here, defendant argues that whether an actual firearm was used during the commission of the offense was a "central dispute" at trial. Defendant also argues that since the jury was instructed on the lesser-included offense of robbery, the court should have also provided an instruction explaining what constitutes a firearm and what does not. We disagree.

¶ 24 The text of IPI Criminal No. 18.35G and the committee notes indicate that the bracketed portion of the instruction is only appropriate when there is some evidence to support the theory that the object used was not a firearm but was one of the excluded items, such as a BB gun or paintball gun. However, there was no evidence supporting such a theory in this case. Therefore, even if the instruction had been given, it would not have been appropriate to include the bracketed portion. Moreover, the term firearm has a "commonly understood meaning that is consistent with the broad statutory definition" (*Clark*, 2015 IL App (3d) 140036, ¶ 34), and there is no requirement that the term be defined, much less that the trial court *sua sponte* offer the definitional instruction.

¶ 25 Even if we agreed with defendant that the trial court erred, he cannot meet his burden under either prong of the plain error doctrine. See *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Under the first prong, the evidence was not closely balanced as to whether a firearm was used in the commission of the offense. As discussed, both Rosemary and Stephanie testified that the man who approached the vehicle carried a firearm. Rosemary described the gun as a "big, black gun" approximately 12 inches long. She was "very familiar" with how guns look because her boyfriend had a gun and she had purchased fake guns for her young son. Stephanie corroborated that "it looked like a gun." Their undisputed testimony was sufficient to establish that the man was armed with a firearm during the robbery. *Clark*, 2015 IL App (3d) 140036, ¶ 36 (holding that the evidence was not closely balanced where firearm was not recovered and the witnesses unequivocally

testified that they observed defendant carrying a firearm); see also *People v. White*, 2011 IL 109689, ¶ 139 (noting that "[a] qualitative—as opposed to strictly quantitative—commonsense assessment of the evidence demonstrates that the evidence was not closely balanced").

¶ 26    In his petition for rehearing, defendant asserts that in *People v. Clifton*, 2019 IL App (1st) 151967, ¶ 44, this court "specifically rejected the reasoning in *Clark* as unfairly shifting the burden to defendant" to disprove the presence of a firearm. *Clifton* stands for that proposition but only as it relates to the sufficiency of the evidence. *Clark* also held, analyzing a similar instructional issue to the one we see here, that the evidence proving the existence of a firearm was not closely balanced in addition to being sufficient. *Clark*, 2015 IL App (3d) 140036, ¶ 36. *Clifton* did not call that portion of *Clark* into question, and we find *Clark* persuasive as to its analysis of first prong plain error.

¶ 27    Additionally, our supreme court has equated second prong plain error review with structural error. *Id.* 613-14. A structural error is "a systemic error which serves to 'erode the integrity of the judicial process and undermine the fairness of the defendant's trial.' " *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009) (quoting *Herron*, 215 Ill. 2d at 186). Examples of structural error include "a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction." *Thompson*, 238 Ill. 2d at 609 (citing *Washington v. Recuenco*, 548 U.S. 212, 218 n.2 (2006)); see also *Neder v. United States*, 527 U.S. 1, 8-10 (1999) (a jury instruction which omits an element of the offense does not rise to the level of structural error). "[M]erely failing to give a jury instruction defining an element of the offense does not rise to the level of structural error." *Clark*, 2015 IL App (3d) 140036, ¶ 37.

¶ 28    Since there was no error in this case, there can be no plain error. See *Hood*, 2016 IL 118581, ¶ 18. It follows that defendant's claim of ineffective assistance of appellate counsel fails. *Harris*, 206 Ill. 2d at 326. For all the reasons set forth herein, we find that the circuit court properly dismissed defendant's postconviction petition. *Domagala*, 2013 IL 113688, ¶ 35.

¶ 29    Affirmed.