**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230001-U

Order filed March 12, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-23-0001 |
| v. | ) ) | Circuit No. 19-CF-514 |
| DAMON J. SHERRER, | ) ) ) | Honorable Cynthia M. Raccuglia, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justices Holdridge and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1   *Held*:  (1) The evidence was sufficient to convict defendant of armed robbery. (2) The court did not commit reversible error when admonishing the jurors. (3) The issue of whether counsel was ineffective for failing to inform defendant of a plea offer is better suited for collateral review. (4) The court should have conducted a preliminary *Krankel* inquiry.

¶ 2   Defendant, Damon J. Sherrer, appeals from his convictions for armed robbery, arguing

(1) the State failed to present sufficient evidence to establish defendant was armed with a firearm;

(2) the La Salle County circuit court did not properly admonish the jury pursuant to Illinois

Supreme Court Rule 431(b) (eff. July 1, 2012); (3) defense counsel was ineffective for failing to convey a plea offer from the State; and (4) this matter should be remanded for a preliminary *Krankel* inquiry. We affirm and remand for a preliminary *Krankel* inquiry.

¶ 3                                              I. BACKGROUND

¶ 4        On December 11, 2019, defendant was charged with two counts of armed robbery (720 ILCS 5/18-2(a)(2) (West 2018)) and one count of burglary (*id.* § 19-1(a)). On the date of trial, the State informed the court that defendant had been given an offer that was lower than what he could receive if found guilty. The court admonished defendant that the sentencing range for armed robbery was 21 to 45 years' imprisonment and the range for burglary was 3 to 7 years' imprisonment. The court informed defendant "if you're found guilty, they did attempt to negotiate this for you to have a lesser charge and a lesser sentence than you're going to get if you're found guilty here." Defendant stated he understood. Counsel then stated, "not to get into the specifics, but just to put it out there, the offer is still a double-digit term in the Department of Corrections, without getting anything more than that."

¶ 5        During *voir dire*, the court failed to inform one juror that defendant did not have to testify. To the other 11 jurors the court recited the necessary principles as one statement of law. The court then asked each prospective juror whether they, "understand and accept that principle of law[.]"

¶ 6        At trial, Nicholas Kiefer testified he was a clerk at the Circle K gas station in Streator. At approximately 1 a.m. on November 22, 2019, he exited the store to smoke a cigarette. While sitting on the curb, defendant approached him and drew a "rifle" from his jeans. Kiefer described the rifle to officers as a "tall, old gun." Defendant was wearing a red bandana across his face which only showed his eyes, latex gloves, jeans, and a thermal sweatshirt. Kiefer entered the store but did not have time to lock the doors. Defendant followed Kiefer inside and walked up to the counter.

Defendant demanded the contents of Kiefer's pockets, so Kiefer gave defendant his debit card and lighter. Kiefer then opened the two cash drawers. Defendant placed the rifle in the corner, walked around the counter to grab the money, and stuffed the money into his pocket. Defendant then tore off lottery tickets before walking back around the counter and picking up the rifle. Defendant walked down the liquor aisle, incidentally dropped a few lottery tickets, and grabbed several bottles of liquor. Defendant told Kiefer to enter the bathroom for 60 seconds. When Kiefer exited the bathroom, he locked the doors and called the police.

¶ 7        After officers arrived, they directed Kiefer to contact his manager, Jennifer Flynn, so she could provide them access to the video surveillance. Flynn arrived shortly thereafter and provided police access to the store's footage, consisting of five cameras. A video recording showing multiple angles of the robbery was played for the jury and admitted into evidence.

¶ 8        An Illinois State Police officer testified he photographed "Pay Me 500,000" lottery tickets numbered 19 and 20 found on the floor in the store. Number 22 was still in the ticket spool. Number 21 was missing. "Gold Rush" lottery ticket number 13 was next in the spool.

¶ 9        Flynn testified she arrived at the gas station shortly after the robbery and allowed officers access to the security footage. After watching the footage, Flynn identified defendant as the offender based on how he carried his body and his gait. She informed the police where defendant lived. Flynn identified the missing lottery tickets based on an inventory kept by the store. She determined seven "Gold Rush" tickets and four "Pay Me" tickets were taken. She was also able to determine that three bottles of alcohol were missing—one each of Ketel One, Captain Morgan, and Jack Daniels. She also noted that all the cash and some gold dollar coins were taken.

¶ 10       Two Streator Police detectives went to defendant's house at approximately 3 a.m. Defendant answered the door and informed the detectives that he had been drinking that evening.

3

A detective asked to speak to defendant's mother who was the owner of the house. Defendant refused several times to wake her. Defendant then attempted to close the door on the detectives. The detectives arrested defendant for interfering with the investigation. Defendant's mother later came downstairs and refused the detectives' request to search the home.

¶ 11 The police secured and executed a search warrant on November 29, 2019. In defendant's bedroom, they found a red and white bandana, multiple empty liquor bottles including two Ketel One bottles, three Jack Daniels bottles, and two Captain Morgan bottles. On the dresser, they found a large bundle of latex gloves and four bandanas. Inside the drawer, they found two scratched and ripped lottery tickets whose types and numbers matched those of the tickets missing from the store. The police did not recover the rifle depicted in the security footage. The jury found defendant guilty on all three counts.

¶ 12 On May 18, 2022, at the sentencing hearing, the court merged the two counts of armed robbery. In allocution, defendant stated he never intended to go to trial, and that if he had known the offer from the State was for 11½ years' imprisonment, he would have accepted. Defendant stated, "I actually asked for, you know, to come out and negotiate, and I was—I was told that's not what we're here for, we're here for trial, it's too late for that." The court informed defendant that the time to amend the charges was before trial and the court could not get involved in settlement discussions. Neither defense counsel nor the State commented on defendant's statement regarding the offer from the State or counsel's failure to convey the offer. The court sentenced defendant to the minimum of 21 years' imprisonment for armed robbery, concurrent with a 7-year term for burglary.

¶ 13 At a July 15, 2022, hearing on defendant's motion for reconsideration of sentence, defendant stated:

"it could have been presented better at trial. I believe it could have been presented better at sentencing.

And, I mean, here we are again, the exact same thing. I can't see anything changing the outcome of this if it's presented the exact same way.

I would like another attorney."

Private counsel was permitted to withdraw, and the public defender's office was appointed.

¶ 14　On December 8, 2022, the public defender informed the court that defendant wanted to withdraw his motion to reconsider sentence, which was allowed. On January 3, 2023, defendant filed a *pro se* notice of appeal.

¶ 15　　　　　　　　　　　　　　　II. ANALYSIS

¶ 16　On appeal, defendant argues: (1) the State failed to prove defendant was armed with a firearm; (2) the court failed to properly admonish the jury pursuant to Rule 431(b); (3) counsel was ineffective for failing to convey an offer from the State of 11½ years' imprisonment; and (4) this matter should be remanded for a preliminary *Krankel* hearing. We will consider each issue in turn.

¶ 17　　　　　　　　　　　　　　　A. Jurisdiction

¶ 18　At the outset, we must first consider our jurisdiction to hear this appeal. Illinois Supreme Court Rule 606 (eff. Dec. 7, 2023) states:

"the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from or if a motion directed against the judgment is timely filed, within 30 days after the entry of the order disposing of the motion." Ill. S. Ct. R. 606(b) (eff. Dec. 7, 2023).

¶ 19    Defendant filed his notice of appeal within 30 days of the withdrawal of his motion to reconsider. We find that withdrawal of the motion amounts to disposal of the motion under the Rule. This conclusion is consistent with federal case law interpreting substantially similar Federal rule. See *Worcester v. Springfield Terminal Ry. Co.*, 827 F.3d 179, 181 (1st Cir. 2016) (verbal order granting motion to withdraw a party's motion for a new trial was an "order disposing of" the motion); see also *People v. Caballes*, 221 Ill. 2d 282, 290 (2006); *United States v. Rodriguez*, 892 F.2d 233, 234 (2d Cir. 1989). Therefore, we have jurisdiction to consider defendant's appeal.

¶ 20                                B. Sufficiency of the Evidence

¶ 21    Turning to the merits, when reviewing a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found defendant guilty beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). We give the State the benefit of all reasonable inferences. *People v. Wheeler*, 226 Ill. 2d 92, 116 (2007). A conviction will only be reversed "where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt." *Id.* at 115. The trier of fact is responsible for assessing the credibility of the witnesses, assigning the appropriate weight to testimony, and resolving discrepancies in the evidence. *People v. Evans*, 209 Ill. 2d 194, 211 (2004).

¶ 22    Here, defendant was found guilty of armed robbery which required the State to prove defendant committed robbery while armed with a firearm. 720 ILCS 5/18-2(a)(2) (West 2018). A firearm under the statute is "any device *** which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas." 430 ILCS 65/1.1 (West 2018); 720 ILCS 5/2-7.5 (West 2018). BB guns are explicitly excluded by the statute. 430 ILCS 65/1.1 (West 2018).

¶ 23    We find the evidence was sufficient to support the jury's finding that the rifle used by defendant was a firearm. Kiefer, who had a clear view of the weapon over the course of the entire robbery, referred to it as a rifle during his testimony and described it to police as a "tall, old gun." See, *e.g.*, *People v. Clark*, 2015 IL App (3d) 140036, ¶ 22 (there was sufficient evidence the weapon used in a robbery was a firearm where two witnesses, one 20 to 30 feet away and the other 50 yards away in a dimly lit area, testified they observed defendant carrying a rifle). Moreover, the jury viewed security footage depicting the weapon and reasonably concluded it was a firearm. We will not upset that determination. See *People v. Fletcher*, 2017 IL App (3d) 140530, ¶ 28 ("The presence of a firearm in an armed robbery prosecution is a question of fact for the jury."); see also *People v. Joseph*, 2021 IL App (1st) 170741, ¶ 63 (no training, experience, or knowledge of firearms is required to identify a firearm).

¶ 24    In coming to this conclusion, we reject defendant's contention that the weapon used in the robbery was a BB gun, possibly a "B-3 underlever air rifle." First, defendant relies heavily upon the fact that defendant put his gun down and turned his back to Kiefer to support his argument the rifle was likely a BB gun. Defendant argues if it were a real firearm, he would not have left the rifle leaning against the wall and then turned his back to both Kiefer and the rifle. This was a determination for the jury to make. Moreover, defendant indicated to police that he was intoxicated, and thus, he was likely not exhibiting correct firearm care and safety. Second, we note defendant's brief includes a photograph of an air rifle from a blog that he argues resembles the rifle in the surveillance footage. However, this photograph was not submitted to the circuit court. It would be improper to consider the photograph for the first time on appeal, as "it 'would amount to a trial *de novo* on an essential element of the charges.' " *People v. Hunter*, 2016 IL App (1st) 141904, ¶ 20 (quoting *People v. Williams*, 200 Ill. App. 3d 503, 513 (1990)); see also *Clark*, 2015

7

IL App (3d) 140036, ¶ 24. In both *Hunter* and *Clark*, the defendants submitted photographs of BB guns and air rifles to the appellate court to support their argument that the State failed to establish the defendants used a firearm under the statute. *Hunter*, 2016 IL App (1st) 141904, ¶ 20; *Clark*, 2015 IL App (3d) 140036, ¶ 24. In both instances, the appellate court refused to consider the photographs because they were never submitted to the circuit court. *Hunter*, 2016 IL App (1st) 141904, ¶ 20; *Clark*, 2015 IL App (3d) 140036, ¶ 24. Here, we decline defendant's invitation to consider the photograph of the BB gun included in his brief because it is not part of the record. See *People v. Moore*, 2015 IL App (1st) 140051, ¶ 20 (quoting *People v. Benford*, 31 Ill. App. 3d 892, 894 (1975)) (" '[i]n an appeal, the purpose of review is to evaluate the record of the trial court, and, in general, the review will be limited to what appears in the record.' ").

¶ 25        Moreover, we reject defendant's argument the jury should have been provided Illinois Pattern Jury Instruction Criminal No. 18.35G (4th ed. 2000) (hereinafter IPI Criminal 4th), which defines the term "firearm." Defendant never requested the jury instruction at trial and the court was not required to *sua sponte* provide the instruction. See *Clark*, 2015 IL App (3d) 140036, ¶ 34 (the court did not err in failing to *sua sponte* give a jury instruction defining firearm in an armed robbery case). " 'When words used in a jury instruction have a commonly understood meaning, the court need not define them with the use of additional instructions; this is particularly true where the pattern instructions do not provide that an additional definition is necessary.' " *Id.* (quoting *People v. Manning*, 334 Ill. App. 3d 882, 890 (2002)). Here, "firearm" has a commonly understood meaning that is consistent with the statutory definition, and the armed robbery jury instructions do not require an additional instruction defining a firearm. See Illinois Pattern Jury Instructions, Criminal, Nos. 14.05, 14.06 (4th ed. 2000) (hereinafter IPI Criminal 4th).

¶ 26                                C. Jury Admonishments

8

¶ 27    Defendant next argues the court committed plain error by failing to properly admonish the jury pursuant to Rule 431(b). "[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). It is necessary to determine first whether the court failed to comply with Rule 431 as there can be no plain error if there is no error. *People v. Johnson*, 218 Ill. 2d 125, 139 (2005).

¶ 28    Rule 431(b) requires circuit courts to confirm that every potential juror accepts and understands four principles of law, including:

> "(1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

"Under the plain language, a court complies with Rule 431(b) if it (1) instructs the prospective jurors on the four principles, (2) asks if the prospective jurors understand those principles, and (3) asks if the prospective jurors accept those principles." *People v. Birge*, 2021 IL 125644, ¶ 34.

¶ 29    We note the parties disagree whether 11 of the jurors were properly admonished because the court stated all four principles and then asked whether they, "understand and accept that principle of law." We need not resolve this issue, however, as the parties agree, and we find, the court failed to comply with Rule 431(b) where it failed to inform one juror that defendant's failure to testify cannot be held against him. See *People v. Bailey*, 2020 IL App (5th) 160458, ¶ 71 ("The

court is required to give all prospective jurors an opportunity to indicate whether they both accept and understand each of [the] four principles.").

¶ 30    Under the plain error analysis, we next must determine whether the "(1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *Herron*, 215 Ill. 2d at 187. "Under the plain error doctrine, the burden of persuasion rests with the defendant." *People v. Russell*, 409 Ill. App. 3d 379, 395 (2011).

¶ 31    Defendant only argues for reversal under the first prong. Specifically, defendant argues the evidence was closely balanced as to whether the rifle used by defendant was a firearm. This argument fails for the reasons outlined above. *Supra* ¶¶ 24-25. Kiefer testified the item used by defendant during the robbery was a rifle and a gun, and the security footage showed defendant holding what the jury reasonably believed to be a firearm. On the other hand, there is no evidence indicating the item was a BB gun. See, *e.g.*, *Clark*, 2015 IL App (3d) 140036, ¶ 36 (the evidence was not closely balanced where two lay witnesses testified that defendant carried a firearm during the robbery and there was "no evidence *** presented at trial suggesting that the rifle *** was anything other than a real firearm"). The evidence was therefore not closely balanced, and thus, the error is not reversible.

¶ 32                    D. Ineffective Assistance of Counsel

¶ 33    Defendant next argues counsel was ineffective for failing to inform him the State offered 11½ years' imprisonment in exchange for his guilty plea. Illinois courts review claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Wise*, 2019 IL App (2d) 160611, ¶ 51. Under *Strickland*, counsel renders ineffective assistance when (1) counsel's performance falls below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient

performance, the results of the proceedings would have had a different outcome. *Id.* "The failure to satisfy either the deficiency prong or the prejudice prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *People v. Enis*, 194 Ill. 2d 361, 377 (2000). "The sixth amendment right to the effective assistance of counsel applies to the plea-bargaining process." *People v. Hale*, 2013 IL 113140, ¶ 15. Defendant bears the burden of proof on both prongs of this test. *People v. Burks*, 343 Ill. App. 3d 765, 775 (2003).

¶ 34        "A defendant has the right to decide whether to plead guilty." *People v. Trujillo*, 2012 IL App (1st) 103212, ¶ 9. "As such, an attorney's failure to disclose a plea offer to the defendant may give rise to a constitutional claim ***." *Id.* Counsel's representation falls below an objective standard of reasonableness if they fail to inform their client of "offers from the prosecution *** that may be favorable to the accused." *Fyre*, 566 U.S. at 145. To establish the second prong of *Strickland*, defendant must:

> "demonstrate a reasonable probability [he] would have accepted the *** plea offer had [he] been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it ***. *** [I]t is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 147.

"The disparity between the sentence a defendant faced and a significantly shorter plea offer can be considered supportive of a defendant's claim of prejudice." *Hale*, 2013 IL 113140, ¶ 18.

¶ 35        Apart from defendant's unsworn statement, there is nothing in the record which would allow us to determine whether such an offer was actually made by the State, whether the offer was

11

not conveyed to defendant by counsel, or whether defendant would have accepted the offer. In *People v. Williams*, 2019 IL App (3d) 160412, ¶ 36, we held defendant's claim of ineffective assistance of counsel was better suited for collateral review where defense counsel never testified as to his conversations with defendant and "[t]he record [was] silent as to whether [defense counsel] informed defendant about the [Sex Offender Registration Act] requirements and the effects of pleading guilty to sexual assault or how those requirements could impact his term of [mandatory supervised release]." Here, because resolution of this matter depends on facts not in the record, we believe it is more appropriate for collateral review which will allow the parties to develop " ' "a factual record bearing precisely on the issue." ' " *People v. Kindle*, 2021 IL App (1st) 190484, ¶ 56 (quoting *People v. Bew*, 228 Ill. 2d 122, 134 (2008), quoting *Massaro v. United States*, 538 U.S. 500, 506 (2003)).

¶ 36                                    E. Preliminary *Krankel* inquiry

¶ 37           Defendant further argues this matter should be remanded for a preliminary *Krankel* inquiry because he complained of his counsel's performance to the court. We consider *de novo* a circuit court's alleged failure to inquire into a claim of ineffective assistance of counsel. *People v. Bates*, 2019 IL 124143, ¶ 14. A defendant has the constitutional right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. If a defendant raises a *pro se* posttrial claim that he was denied his constitutional right to the effective assistance of trial counsel, the court must inquire further into defendant's allegations. *People v. Krankel*, 102 Ill. 2d 181, 189 (1984); *People v. Roddis*, 2020 IL 124352, ¶ 34. "Hearing those claims is a two-step process: (1) the circuit court makes a preliminary inquiry to examine the factual basis of the defendant's claim and (2) if the allegations show 'possible neglect of the case,' new counsel is appointed to

represent the defendant in a full hearing on his *pro se* claims." *People v. Horman*, 2018 IL App (3d) 160423, ¶ 24 (quoting *People v. Moore*, 207 Ill. 2d 68, 78 (2003)).

¶ 38 The defendant only needs to bring the claim to the court's attention to trigger a preliminary inquiry. *Id.* "The applicable standard of review depends on whether the trial court did or did not determine the merits of the defendant's *pro se* posttrial claims of ineffective assistance of counsel." *Jackson*, 2020 IL 124112, ¶ 98. "[W]hen a defendant brings a clear claim asserting ineffective assistance of counsel, either orally or in writing, this is sufficient to trigger the trial court's duty to conduct a *Krankel* inquiry." *People v. Ayres*, 2017 IL 120071, ¶ 18. " '[A] defendant does not need to explicitly label his claim as one of ineffective assistance of counsel. [Citation.] *** [I]t is sufficient for a defendant to alert the court that counsel failed to do something that should have been done.' " *In re Johnathan T.*, 2022 IL 127222, ¶ 53 (quoting *People v. Banks*, 2021 IL App (5th) 190129-U, ¶ 30 (Wharton, J., dissenting)).

¶ 39 Here, the parties agree, and we find, defendant's statements at the July 15, 2022, postsentencing hearing triggered the court's duty to conduct a preliminary *Krankel* inquiry. In reference to his attorney's performance, defendant stated:

> "it could have been presented better at trial. I believe it could have been presented better at sentencing.
>
> And, I mean, here we are again, the exact same thing. I can't see anything changing the outcome of this if it's presented the exact same way.
>
> I would like another attorney."

Defendant's statement was a clear complaint about his attorney's performance which triggered the court's duty to conduct a preliminary *Krankel* inquiry. See, *e.g.*, *id.* (the court had a duty to conduct a preliminary *Krankel* inquiry where the juvenile defendant said of his counsel, "[w]e don't talk.

13

I'm never prepared for the stand. He does not answer calls."). The subsequent appointment of the public defender's office did not obliviate the need to conduct an inquiry. See *People v. Roberson*, 2021 IL App (3d) 190212, ¶ 20. We therefore remand this matter for a preliminary *Krankel* inquiry.

¶ 40                                          III. CONCLUSION

¶ 41           The judgment of the circuit court of La Salle County is affirmed and remanded.

¶ 42           Affirmed and remanded.